# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 07-6036EM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Falcon Products, Inc., et al., | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Falcon Creditor Trust, | * | |
| | * | Appeal from the United States |
| Plaintiff - Appellant, | * | Bankruptcy Court for the Eastern |
| | * | District of Missouri |
| v. | * | |
| | * | |
| First Insurance Funding, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: December 10, 2007
Filed: January 28, 2008

_____

Before MAHONEY, FEDERMAN and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's determination on summary judgment that certain payments made to the Defendant by Debtor Falcon Products, Inc., within the 90-day preference period were not preferential under 11 U.S.C. § 547. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). For the reasons set forth

below, we reverse the decision of the bankruptcy court and remand this case for further proceedings consistent with this opinion.

## I.  STANDARD OF REVIEW

We review the bankruptcy court's grant of summary judgment *de novo*, applying the same standard used by the bankruptcy court and viewing the evidence in the light most favorable to the Plaintiff as the nonmoving party. Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[1]

## II.  BACKGROUND

The Panel adopts the factual findings of the bankruptcy court, which findings are undisputed.

First Insurance Funding ("First Insurance") is engaged in the business of financing commercial insurance premiums.  In November 2004, Falcon Products, Inc. ("Falcon") entered into a commercial premium finance agreement with First Insurance to finance several insurance policies ("Policies").  The premiums for the Policies totaled $1,889,409.68.  Under its agreement with First Insurance, Falcon made a $472,584.85 down payment on the Policies and agreed to repay the balance of $1,416,824.83, plus interest, in ten monthly installments of $144,943.05, with the first installment due December 1, 2004.  Falcon granted First Insurance a security interest in the unearned premiums under the Policies to secure the premiums financed.  The value of unearned premiums diminished each day by approximately $5,175.62 – the value of the daily insurance coverage provided under the Policies.  In the event Falcon failed to make a payment to First Insurance, First Insurance had the right to

---

[1] Fed. R. Civ. P. 56(c), made applicable in bankruptcy cases by Fed. R. Bankr. P. 7056; *Williams v. Marlar* (*In re Marlar*), 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997)).

cancel the Policies and to apply any unearned premiums to the unpaid balance owed to First Insurance.

On December 6, 2004, Falcon paid the first monthly installment of $144,943.05 to First Insurance. Immediately prior to this payment, Falcon owed First Insurance $1,449,430.50, and the unearned premiums had a value of $1,690,422.54. Therefore, the value of the unearned premiums (First Insurance's collateral) exceeded the debt owed by Falcon by $240,992.04.

On January 10, 2005, Falcon paid the second monthly installment of $144,943.04, plus a late charge of $7,247.08, for a total payment of $152,193.12. Immediately prior to this payment, Falcon owed First Insurance $1,304,473.45, and the unearned premiums had a value of $1,519,868.12. Therefore, the value of First Insurance's collateral exceeded the debt by $215,394.67.

On January 31, 2005, Falcon Products, Inc.; Epic Furniture Group, Inc.; The Falcon Companies International, Inc.; Falcon Holdings, Inc.; Howe Furniture Corporation; Johnson Industries, Inc.; Madison Furniture Industries, Inc.; Sellers & Josephson, Inc.; and Shelby Williams Industries, Inc. (collectively, "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code. On the petition date, Falcon owed First Insurance $1,159,527.41, and the unearned premiums had a value of $1,418,601.44. Therefore, the value of the unearned premiums exceeded the debt owed to First Insurance by Falcon by $259,074.03.

On October 18, 2005, the bankruptcy court confirmed the Debtors' Third Amended Joint Plan of Reorganization pursuant to which the Debtors' cases were substantively consolidated. Under the Plan, the authority to prosecute avoidance actions under Chapter 5 of the Bankruptcy Code vested in the Falcon Creditor Trust ("Trust").

3

On January 12, 2007, the Trust filed a complaint to avoid and recover under §§ 547 and 550 of the Bankruptcy Code Falcon's December and January Payments to First Insurance, totaling $297,136.17.

## III.  DISCUSSION

To avoid a transfer as a preference, a trustee (or entity imbued with the powers thereof) must establish every element of 11 U.S.C. § 547(b),[2] which provides:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made–
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if--
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In this case, only the last element is in dispute – whether the $297,136.17 in payments the Debtor made to First Insurance in December 2006 and January 2007 enabled First Insurance to receive more than it would have received under a hypothetical Chapter 7 liquidation had those transfers not been made.  The resolution of this dispute turns on an issue over which the courts are divided, namely: For

---

[2] 11 U.S.C. § 547(g).

purposes of applying the hypothetical liquidation test to an allegedly preferential payment made to a secured creditor, should the collateral be valued as of the date of the transfer(s) or as of the petition date?[3] Or, expressed in the terms of the statute, should the hypothetical liquidation test of § 547(b)(5) be conducted as of the transfer date or as of the petition date?

The bankruptcy court sided with the courts holding that the hypothetical liquidation test should be conducted as of the date of the allegedly preferential transfer. And in this case, because the undisputed evidence established that the value of First Insurance's collateral – the unearned insurance premiums – exceeded the amount of debt owed to First Insurance on the dates of both of the allegedly preferential transfers, the bankruptcy court concluded that neither of the transfers sought to be avoided by the Trust enabled First Insurance to receive anything more than it would have if the Debtor had been liquidated under Chapter 7 of the Bankruptcy Code and the transfers had not been made. The bankruptcy court granted summary judgment in favor of First Insurance accordingly.

---

[3] *Compare In re Rocor Intern., Inc.*, 2007 WL 4376026 (B.A.P. 10th Cir. December 17, 2007) ("*Rocor*")(conducting hypothetical liquidation test as of the transfer date); *Savage & Assoc. P.C. v. A.I. Credit Corp.* (*In re Teligent*) 337 B.R. 39, 47 (Bankr. S.D. N.Y. 2005) (same); *Telesphere Liquidating Trust v. Galesi* (*In re Telesphere*), 229 B.R. 173 (Bankr. N.D. Ill. 1999) (same); *Schwinn Plan Committee v. Transamerica Insurance Finance Corp.* (*In re Schwinn Bicycle Co.*), 200 B.R. 980 (Bankr. N.D. Ill. 1996) (same) ("*Schwinn*"), *with Sloan v. Zions First National Bank* (*In re Castletons, Inc.*) 900 F.2d 551 (10th Cir. 1993) (conducting hypothetical liquidation test as of the petition date); *Gray v. A.I. Credit Corp.* (*In re Paris Industries Corp.*), 130 B.R. 1 (Bankr. D. Me. 1991) (same); *Kroh Brothers Development Co. v. Commerce Bank of Kansas City, N.A.* (*In re Kroh Brothers Development Co.*), 86 B.R. 186 (Bankr. W.D. Mo. 1983) (same). *See also*, *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936) (stating that the hypothetical liquidation test must be conducted as of the date of the petition); *Barry v. Crancer*, 192 F.2d 939 (8th Cir. 1951) (same).

The Trust, on the other hand, argues that Supreme Court and Eighth Circuit Court of Appeals precedent require, and the better reasoned case law supports, conducting the § 547(b)(5) hypothetical liquidation test as of the petition date.  As of the petition date, the unearned premiums had a value of $1,418,601.44, and the debt owed to First Insurance totaled $1,456,663.58, representing the then current debt ($1,159,527.41) plus the amount of the transfers assumed not to have been made ($297,136.17).  Because the amount of the debt exceeded the amount of the collateral (by $38,062.14), the Trust concludes, the transfers at issue enabled First Insurance to receive more than it would have in a Chapter 7 case, and the bankruptcy court's order granting summary judgment in favor of First Insurance should be reversed.

Upon review of the statutory language of § 547(b) and the case law applying it and its predecessor provision in the Bankruptcy Act, the Panel concludes that the hypothetical liquidation test must be conducted as of the petition date.  Consequently, the record in this case supports a finding that the $297,136.17 in transfers received by First Insurance within the 90 days prior to the petition date enabled it to receive more as a result of those transfers than First Insurance would have received if this was a case under Chapter 7 and the transfers had not been made.

When a statute's language is plain, "the sole function of the courts is to enforce it according to its terms."[4]  Here, § 547(b)(5) does not specifically indicate whether the hypothetical liquidation test should be conducted as of the transfer date or as of the petition date, but it does state unequivocally that the test assumes that the transfers had not been made.[5]  Recognition of this assumption, which has been referred to as the "add-back" method, is important because it forecloses one of the arguments used

---

[4] *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

[5] 11 U.S.C. §547(b)(5)(B).

against conducting the test as of the petition date. For reasons that are unclear, several cases have conclusorily determined that the add-back method does not apply to transfers to fully secured creditors because payments to a fully secured creditor cannot be preferential.[6] But this statement still begs the question: Should transfer-date or petition-date values be used to determine a secured creditor's status? Moreover, the plain language of § 547(b)(5) simply does not support a departure from the add-back method.

Upon inspection, the rejection of the add-back method in these cases is more of a veiled rejection of a petition-date hypothetical liquidation test than a true objection to the add-back method since the status of the secured creditors in these cases was determined using the add-back method, *i.e.*, by considering the creditor's secured status immediately prior to the transfer.[7] Therefore, the only real issue is the timing of the hypothetical liquidation test, and Supreme Court precedent requires that the hypothetical liquidation test be conducted as of the petition date.

This precedent is found in *Palmer Clay Products Co. v. Brown,*[8] wherein the Supreme Court stated:

> Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged

---

[6] *See In re Rocor*, 2007 WL 4376026, *3; *In re Schwinn Bicycle Co.*, 200 B.R. at 990 (citations omitted).

[7] *In re Rocor Int'l, Inc.*, 2007 WL 4376026, *3; *In re Schwinn Bicycle Co.*, 200 B.R. at 990.

[8] 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936). *See also, Barry v. Crancer*, 192 F.2d 939, 941 (8th Cir. 1941) (stating that *Palmer* settled the issue of whether the effect of a preference is to be determined on the transfer date or as of the date of the petition).

preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results.

\* \* \*

We may not assume that Congress intended to disregard the actual result, and to introduce the impractical rule of requiring the determination, as of the date of each payment, of the hypothetical question: What would have been the financial result if the assets had then been liquidated and the proceeds distributed among the then creditors?[9]

Despite this apparently unequivocal statement that the preferential effect of a preference – *i.e.*, the hypothetical liquidation test – is to be determined as of the petition date, the bankruptcy court did not address *Palmer*, and First Insurance argues that it is not applicable to transfers to secured creditors.

First Insurance and the cases upon which it relies contend *Palmer* is not controlling because it dealt only with payments on unsecured claims.[10] But there is nothing in the language of *Palmer* which expresses such a limitation, and the Panel finds no basis to impart or create one. The law applied in *Palmer* – § 60a of the Bankruptcy Act – is substantially similar to § 547(b) of the Bankruptcy Code,[11] and the concern raised by the Supreme Court over the "impracticality" of conducting the hypothetical liquidation test on the date of each payment is no less (and is probably greater) when payments on secured claims are involved.

---

[9] *Palmer*, 297 U.S. at 229.

[10] *See, e.g., In re Telesphere*, 229 B.R. at 179; *In re Schwinn*, 200 B.R. 990.

[11] Bankruptcy Act § 60a provides in pertinent part: "A person shall be deemed to have given preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication \* \* \* made a transfer of any of his property, and the effect of the enforcement of such \* \* \* transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The impetus to limit *Palmer* to situations involving payments on unsecured claims is understandable – it seems almost illogical to find that a payment on a claim fully secured at the time of the transfer might be preferential under § 547(b).  But the resolution of that illogic does not lie in refashioning the hypothetical liquidation test of § 547(b)(5) to incorporate elements of § 547(c) preference defenses, as many courts have done; rather, it comes in the *separate* application of those defenses to the preferential transfer at issue.

A case recently decided by the Bankruptcy Appellate Panel for the Tenth Circuit, *In re Rocor,*[12] which relies on many of the same cases cited by the bankruptcy court, illustrates how courts have improperly conflated a preference analysis with a preference defense analysis.  In determining that a creditor (also an insurance premium financier) did not receive a preference because it was fully secured by unearned insurance premiums on the date of the transfer, even though it would have been under-secured as of the petition date, the *Rocor* court reasoned:

> If a creditor is fully secured, then it follows that a payment to that creditor merely reduces the secured claim, and releases from the security interest the same amount of the collateral. . . . If the payment to the creditor results in a release of an equivalent value of collateral, then the newly released value would theoretically be made available to the rest of the bankruptcy estate.  Under such circumstances, there is no such diminution to the estate by the payment, and the secured creditor did not receive anything more than it would have received had the payment not been made.[13]

The logic applied here is sound, but it is misplaced.  To wit, it improperly conflates a preference analysis with the analysis implicated by the "contemporaneous

---

[12] 2007 WL 4376026 (B.A.P. 10th Cir. December 17, 2007).

[13] *Id*. at *4-5 (citing *In re Schwinn Bicycle Co.*, 200 B.R. at 993).  *See also*, *In re Telesphere*, 229 B.R. at 180.

exchange for new value" defense set forth in 11 U.S.C. § 547(c)(1).[14] Section 547(b), by itself, does not contemplate any consideration of what a debtor receives in exchange for a transfer. As *Palmer* instructs, it is concerned solely with the impact the transfer has on the bankruptcy estate as of the petition date.[15] A consideration of what a debtor may have received in exchange for the transfer – contemporaneously or subsequently – comes into play only when the appropriate preference defense is raised.[16] Conflating these two analyses might be expedient, in that payments on fully secured claims will likely be shielded from avoidance under § 547(c)(1) because, as noted above, "the payment to the creditor results in a release of an equivalent value of collateral," but it is important to keep them separate – as an analytical and a practical matter, especially where (as in this case) the case is before a court on summary judgment under § 547(b), and neither party has had an opportunity to advance or refute the applicability of preference defenses under § 547(c).

Finally, the bankruptcy court grounded its decision to conduct the hypothetical liquidation test as of the time of the transfers in dispute on the assumption that First Insurance would have asserted its right to cancel the Policies and to obtain the

_____

[14] Section 547(c)(1) provides:
The trustee may not avoid under this section a transfer—
    (1) to the extent that such transfer was--
        (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
        (B) in fact a substantially contemporaneous exchange.

[15] *Palmer*, 297 U.S. at 229.

[16] 11 U.S.C. § 547(c)(1) and (4).

unearned premiums if Falcon failed to make either of the payments in dispute. But this assumption is not warranted by the law or supported by the record.[17]

## IV.  CONCLUSION

For the reasons stated above, we reverse the bankruptcy court's decision on summary judgment and remand this case so that the bankruptcy court may consider any evidence in support of the Defendant's § 547(c) defenses and determine the actual effect of the transfers, as directed by the Supreme Court in *Palmer Clay Products v. Brown*.

---

[17] *Cf. Schwinn*, 200 B.R. at 994-95 ("[T]here is nothing in the Bankruptcy Code that prohibits the court from considering what actually would have occurred had an allegedly preferential transfer not been made.").  The Panel is not persuaded that the absence of such a prohibition is justification for engaging in speculation about what a creditor would have done if it had not been paid, especially in light of *Palmer*'s directive to conduct the hypothetical liquidation test as of the petition date.