# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————

No. 11-6007

———————

In re:                                              \*
                                                    \*
Dennis E. Hecker,                                   \*
                                                    \*
        Debtor.                                     \*
                                                    \*
Randall L. Seaver, Trustee,                         \*
                                                    \*
        Plaintiff-Appellant                         \*
                                                    \*     Appeal from the United
                        v.                          \*     States Bankruptcy Court
                                                    \*     for the District of Minnesota
New Buffalo Auto Sales, LLC,                        \*
a Minnesota limited liability company,              \*
f/k/a New Buffalo Chrysler, LLC;                    \*
Maurice J. Wagener; and Palladium                   \*
Holdings, LLC,                                      \*
                                                    \*
        Defendants-Appellees.                       \*

———————

Submitted:  July 27, 2011
Filed: October 20, 2011

———————

Before SCHERMER, VENTERS, and NAIL, Bankruptcy Judges.

———————

NAIL, Bankruptcy Judge.

Trustee Randall L. Seaver appeals the January 19, 2011 summary judgment of the bankruptcy court in favor of New Buffalo Auto Sales, LLC, Maurice J. Wagener, and Palladium Holdings, LLC. We affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND

Koch Group Mpls, LLC ("Koch Group") obtained a judgment against Dennis E. Hecker ("Debtor") for $813.67 on April 29, 2009. New Buffalo Auto Sales, LLC ("New Buffalo") and Maurice J. Wagener ("Wagener") obtained a judgment against Debtor for $324,938.72 on May 7, 2009. When the judgments were entered, Debtor owned certain nonexempt real property located at 1615 Northridge Drive in Medina, Minnesota ("Northridge"), which was registered under Minnesota's Torrens law.

Debtor filed for relief under chapter 7 of the bankruptcy code on June 4, 2009. On September 28, 2009, the bankruptcy court granted U.S. Bank, which held a mortgage against Northridge, relief from the automatic stay. U.S. Bank's motion indicated Debtor had little or no equity in the property. The property went into foreclosure.

On January 7, 2010, Trustee Randall L. Seaver ("Trustee") filed a motion for approval of a settlement he had reached with Debtor, Ralph Thomas, and another individual. As part of the settlement, Trustee agreed to transfer the bankruptcy estate's interest in Northridge to Thomas via a trustee's deed in exchange for $75,000.00 and the resolution of some other matters.

On January 19, 2010, while Trustee's settlement motion was pending, U.S. Bank purchased Northridge at the sheriff's foreclosure sale for $213,263.00. A six-month redemption period began to run under MINN. STAT. § 580.23. Other encumbrances against the property at the time substantially exceeded its assessed value.[1]

---

[1] The property, which had an assessed value of $1,617,000.00, was encumbered by three mortgages, two tax liens, and a mechanic's lien that together

-2-

By order dated January 27, 2010, the bankruptcy court approved Trustee's settlement, and Trustee delivered a trustee's deed to Thomas. However, Thomas never registered the trustee's deed, and the registrar of titles never issued a certificate of title to Thomas: The property remained registered in Debtor's name. On February 23, 2010, the bankruptcy court granted Mortgage Electronic Registration Systems, Inc., which also held a mortgage against Northridge, relief from the automatic stay.

In a letter to the bankruptcy court dated March 18, 2010, Trustee's attorney reported the $75,000.00 had not come from Thomas and Thomas had no intent to purchase Northridge. The attorney reported an initial investigation indicated the $75,000.00 had instead come from Debtor's children's and grandchildren's trust accounts. At some point, Thomas returned the trustee's deed to Trustee and also executed a quitclaim deed to Trustee. The $75,000.00 nevertheless remains in Trustee's hands, apparently subject to a dispute over whether the funds comprised property of the bankruptcy estate even before they were tendered as part of the January 7, 2010 settlement.

On April 20, 2010, New Buffalo and Wagener registered their judgment on the Torrens certificate of title to Northridge. Two days later, Koch Group registered its judgment on the Torrens certificate.[2] The registration of the judgments created judgment liens against Northridge. MINN. STAT. §§ 508.63, 508A.63, and 548.09. Koch Group assigned its judgment to Palladium Holdings, LLC ("Palladium") on

---

totaled approximately $3,700.000.00.

[2] Neither New Buffalo and Wagener nor Koch Group sought relief from the automatic stay before registering their judgments. However, Trustee has not raised the possible implications of 11 U.S.C. § 362(a). *LaBarge v. Vierkant* (*In re Vierkant*), 240 B.R. 317, 325 (B.A.P. 8th Cir. 1999) (actions taken in violation of the automatic stay are void *ab initio*). In fact, in conversations with counsel for the judgment holders in July 2010, Trustee said he would not assert their post-petition actions were in violation of the stay.

June 11, 2010. Palladium registered the assignment on July 8, 2010, and someone satisfied the judgment on July 20, 2010.[3]

Neither Debtor nor Trustee timely redeemed Northridge from foreclosure under MINN. STAT. § 580.23. Other senior encumbrance holders likewise failed to redeem under MINN. STAT. § 580.24. There seems to be no dispute the foreclosure of these other interests and encumbrances is what created measurable equity in Northridge. On July 22, 2010, New Buffalo, using its post-petition judgment lien, exercised a right of redemption and then sold Northridge to Palladium. In exchange, Palladium gave New Buffalo the $218,025.30 it needed to redeem the property, paid it an additional $80,000.00 cash, and gave it a $320,000.00 mortgage against the property.

Trustee registered a notice of bankruptcy case on the certificate of title on July 23, 2010.[4] Three days later, he commenced an adversary proceeding against New Buffalo and Wagener and registered a notice of *lis pendens* on the certificate of title. Two days after that, New Buffalo registered its $320,000.00 mortgage against the property. The next day, Palladium filed a certificate of redemption for $561,500.00. Eleven days later, Trustee added Palladium as a defendant in the adversary proceeding by a second amended complaint.

Under the second amended complaint, Trustee sought to avoid New Buffalo and Wagener's and Palladium's judgments against Northridge as preferential transfers under 11 U.S.C. § 547(b) and to have the post-petition registration of the judgments avoided under § 549.[5] He further sought to preserve the value of the judgments, the

---

[3]    Trustee believes Debtor satisfied the Koch-Palladium judgment.

[4]    Wagener's role in these transactions was disputed. He contended he did not receive any proceeds from the judgment he and New Buffalo held, and the bankruptcy court found in his favor. That particular issue is not before us on appeal.

[5]    Whether these judgments may be avoided with respect to real property other than Northridge is not before us. In his reply brief, Trustee argues the appellees mistakenly focus too narrowly on Northridge; however, that was the focus of

judgment liens, and the subsequent transfers for the bankruptcy estate under §§ 550 and 551. Finally, he wanted the bankruptcy court to declare Palladium could not use Koch's satisfied judgment to redeem Northridge. The parties presented the matter to the bankruptcy court on cross motions for summary judgment.[6]

After hearing oral argument, the bankruptcy court granted summary judgment for the defendants, New Buffalo, Wagener, and Palladium ("Judgment Holders"). In an oral decision, the court concluded: (1) the docketing of the pre-petition judgments did not constitute preferential transfers of an interest in Northridge because, under Minnesota's Torrens law, the judgments had not been registered on the certificate of title pre-petition; (2) even if the docketing of the pre-petition judgments constituted transfers, the transfers were not avoidable because they had no value since there was no equity in Northridge at the time of the docketing; (3) even if the post-petition registration of the judgments on the certificate of title constituted transfers, the transfers were not avoidable, because they had no value, since there was no equity in Northridge at that time; (4) a registration of the trustee's deed conveying Northridge to Thomas was not necessary under Minnesota's Torrens law for the conveyance to be valid between the bankruptcy estate and Thomas, so no avoidable post-petition transfer of property of the bankruptcy estate occurred when the judgments were registered post-petition; (5) even if the registration of the judgments was a transfer of property of the bankruptcy estate, the transfer had been authorized by the bankruptcy court by virtue of its approval of Trustee's sale of Northridge; (6) Trustee did not have a recoverable claim against Wagener because Wagener did not receive any value from the transfers; and (7) under § 550, Trustee could only recover from Judgment Holders the value of the transfers, not the ultimate benefit received by Judgment Holders from the transfers.

---

Trustee's second amended complaint.

[6] Shortly after the adversary proceeding was commenced, the parties, in a settlement filed in Debtor's main case, agreed to allow Northridge to be liquidated while the adversary proceeding otherwise continued. Debtor objected, arguing Trustee no longer had an interest in Northridge based on the trustee's deed to Thomas dated February 10, 2010. The bankruptcy court approved the agreement by order entered August 19, 2010.

On appeal, Trustee argues the pre-petition docketing of the judgments constituted transfers for value made within the preference period that were avoidable under § 547; Judgment Holders' post-petition registration of their judgments was avoidable under § 549, because the bankruptcy estate had not been divested of its interest in Northridge post-petition; and he was entitled to recover the *benefits* received by Judgment Holders from the judgments and attendant judgment liens–not just the value of the transfers themselves–under § 550.[7]

## STANDARD OF REVIEW

We review a bankruptcy court's grant of summary judgment *de novo*, *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011) (citing *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)).[8] We will affirm if "there

---

[7]   Trustee failed to list the third issue among his "Issues Presented for Review" in his opening brief, though he and Judgment Holders discussed it in their briefs.

[8]   The parties do not dispute the applicable law governing a motion for summary judgment. As we recently stated:

> Summary judgment is appropriate in this case if there was no genuine issue as to any material fact and the moving party was entitled to a judgment as a matter of law. Fed.R.Civ.P. 56, applicable herein pursuant to Fed.R.Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We view the summary judgment record in the light most favorable to the nonmoving party and afford that party all reasonable inferences. [*Blocker v. Patch* (*In re Patch*),] 526 F.3d [1176,] 1180 [8th Cir. 2008]]. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*. at 1180 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal marks omitted)).

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "We may affirm on any basis supported by the record." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (citing *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)). Here we must review *de novo* whether the bankruptcy court's conclusions interpreting the relevant statutes and applying them to the facts were correct. *Fisette v. Keller* (*In re Fisette*), 455 B.R. 177, 180 (B.A.P. 8th Cir. 2011); *Checkett v. Sutton* (*In re Sutton*), 365 B.R. 900, 904 (B.A.P. 8th Cir. 2007).

## DISCUSSION

### 11 U.S.C. § 547

If we assume Trustee is correct that under § 547(e)(2)(C), Judgment Holders' pre-petition judgments and attendant judgment liens may be deemed "made" immediately before the petition date, *see, e.g., Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 843-44 (8th Cir. 2010), then under § 547(b)(5) Trustee must show the judgment liens enabled Judgment Holders to receive more than they would have received in a hypothetical chapter 7 liquidation where the judgments had not been perfected. 11 U.S.C. § 547(b)(5). This hypothetical liquidation test is conducted as of the petition date. *Falcon Creditor Trust v. First Insurance Funding (In re Falcon Products, Inc.)*, 381 B.R. 543, 547 (B.A.P. 8th Cir. 2008).

The parties agree there was no equity in Northridge on the petition date to support these judgment liens. Accordingly, Judgment Holders' judgments and attendant judgment liens, if deemed perfected just before the petition date, did not enable them to receive more than they would have received in a liquidation on the petition date. For this reason, the bankruptcy court correctly concluded these judgments did not constitute avoidable pre-petition transfers under § 547(b).

---

*Heide v. Juve* (*In re Juve*), No. 11-6006, ___ B.R. ___, 2011 WL 4104925, *2 (B.A.P. 8th Cir. Sept. 16, 2011).

11 U.S.C. § 549

A transfer, including a lien, may be avoided under 11 U.S.C. § 549(a) if: (1) the subject property was property of the bankruptcy estate; (2) the property was transferred; (3) the transfer was made post-petition; and (4) the transfer was not authorized by the bankruptcy code or the bankruptcy court. *Nelson v. Kingsley (In re Kingsley)*, 208 B.R. 918, 920 (B.A.P. 8th Cir. 1997); *Schnittjer v. Burke Construction Co. (In re Drahn)*, 405 B.R. 470, 473 (Bankr. N.D. Iowa 2009). In this case, the parties presented for the bankruptcy court's consideration two of the four elements under § 549(a): whether Northridge was still property of the bankruptcy estate at the time the judgments were registered; and whether the transfers had been authorized by the bankruptcy court.

With respect to whether Northridge was still property of the bankruptcy estate, at issue is the effect of Minnesota's Torrens law on the court-approved January 7, 2010 agreement that authorized Trustee to convey Northridge to Thomas.[9] The relevant statute provides:

> An owner of registered land may convey, mortgage, lease, charge, or otherwise deal with the same as fully as if it had not been registered. An owner of registered land may use any form of deed, mortgage, lease, or other voluntary instrument sufficient in law for the purpose intended. *No voluntary instrument of conveyance purporting to convey or affect registered land, except a will, and a lease for a term not exceeding three years, shall take effect as a conveyance, or bind or affect the land, but shall operate only as a contract between the parties, and as authority to the registrar to make registration. The act of registration shall be the operative act to convey or affect the land.*

MINN. STAT. § 508.47 or § 508A.47, subd. 1 (emphasis added).

---

[9] Trustee's settlement agreement regarding Northridge proposed a transfer to "Thomas or his assign[.]" The order approving the settlement agreement approved a transfer to "the debtor or his designee." The record does not indicate whether the change was a mistake, but the parties, in their briefs, presume Thomas was the intended transferee.

There is no dispute Trustee's deed to Thomas was never registered, and there is no evidence Thomas was in possession of the property.[10] Thus, under Minnesota law, Thomas never acquired a legal interest in Northridge. *United States v. Premises Known as 7725 Unity Avenue North, Brooklyn Park, Minnesota*, 294 F.3d 954, 957 (8th Cir. 2002) (under Minnesota law, only the act of registration creates an interest in Torrens property); *Scanlan v. Nielsen*, 561 N.W.2d 917 (Minn. App. 1997) (good faith purchaser who acquired land from record owner, rather than second purchaser who bought in good faith from trustee in owner's bankruptcy case, held title to the land where she was the first to register her interest)*; and Fingerhut Corp. v Suburban Nat. Bank*, 460 N.W.2d 63, 65-67 (Minn. App. 1990)(registration is the operative act that creates a legal interest in Torrens property and is what distinguishes it from abstract property) (cited and distinguished in *Chaney v. Minneapolis Community Development Agency*, 641 N.W.2d 328, 333-34 (Minn. App. 2002)).

Consequently, all that existed under Minnesota law was a court-approved agreement authorizing Trustee to make the transfer. When New Buffalo and Wagener's judgment and Koch Group's judgment were registered in April 2010, title to Northridge was still in Debtor's name, and Northridge was still property of Debtor's bankruptcy estate. If Debtor's and the bankruptcy estate's interests in Northridge had been transferred to Thomas pursuant to the bankruptcy court's January 27, 2010 order, Judgment Holders could not have registered their judgments against Debtor and obtained judgment liens against Northridge. Judgment Holders cannot meritoriously

---

[10]   In addition to a possible exception for fraud, *see Fingerhut Corp. v. Suburban Nat. Bank*, 460 N.W.2d 63, 67 (Minn. Ct. App. 1990), there are two other exceptions to registration recognized under Minnesota law. An unrecorded interest may take precedence over a recorded interest if the unrecorded interest holder was in possession of the property under a deed or contract for deed, MINN. STAT. § 508.25, or if the recorded interest holder had actual knowledge of the unrecorded interest. *In re Collier*, 726 N.W.2d 799, 809 (Minn. 2007); *but see Lindquist v. Truwe* (*In re Keenan*), 96 B.R. 197, 199 (Bankr. D. Minn. 1989) (trustee, as *bona fide* purchaser under § 544(a)(3), is not charged with constructive notice of an unregistered contract for deed for Torrens property even if the vendee under the contract is in possession of the property).

argue the transfer to Thomas was effective while also arguing their judgments against Debtor were appropriately registered against Northridge post-petition.

Judgment Holders' argument that Trustee abandoned Northridge from the bankruptcy estate under the terms of the January 7, 2010 agreement is also without merit. Trustee sought and obtained authority to *sell* the bankruptcy estate's interest in Northridge pursuant to an agreement. The agreement does not contemplate an abandonment; the order does not direct an abandonment; and no provision of 11 U.S.C. § 363 or § 554 transforms the court-authorized sale into an abandonment. *See, e.g., Tiffany v. Norwest Bank of Des Moines, NA*, 972 F.2d 355 (table) (8th Cir. 1992) (trustee may abandon property back to the debtor so the bankruptcy estate will not bear any tax liability arising from a subsequent foreclosure sale) (citing *Samore v. Olson* (*In re Olson*), 930 F.2d 6, 8 (8th Cir. 1991) (an abandonment of chapter 7 property by the trustee is not a "sale or exchange" for tax purposes)); and *In re Wiczek*, 452 B.R. 762, 767 (Bankr. Minn. 2011) (recognizing difference between a trustee's liquidation of an asset through a sale and a trustee's abandonment). To conclude otherwise would mean any court-authorized transfer of property of the bankruptcy estate that is never consummated nonetheless constitutes an abandonment and removes the subject property from the bankruptcy estate.

The orders granting U.S. Bank and Mortgage Electronic Registration Systems, Inc. relief from the automatic stay and the commencement of foreclosure proceedings likewise failed to terminate the bankruptcy estate's interest in Northridge. Even after U.S. Bank foreclosed its mortgage, the bankruptcy estate still held at least a redemption interest.[11] MINN. STAT. §§ 580.23 and 580.24(a); *see Lange v. Schropp*

---

[11] Trustee's interests in Northridge on the petition date under his 11 U.S.C. § 544(a) strong-arm powers were not addressed by the parties or the bankruptcy court. *See, e.g., Scanlan v. Nielsen*, 561 N.W.2d 917 (Minn. App. 1997) (good faith purchaser who acquired land from record owner, rather than second purchaser who bought in good faith from trustee in owner's bankruptcy case, held title to the land where she was the first to register her interest); *Collier*, 726 N.W.2d at 809 (purchaser of Torrens property who has actual knowledge of a prior unregistered interest in the property is not a "good faith purchaser"). We take no position on whether these interests are appropriately considered on remand.

(*In re Brook Valley VII, Joint Venture*), 496 F.3d 892, 899-900 (8th Cir. 2007) (after the automatic stay is lifted by the bankruptcy court, bankruptcy estate retains an interest in the subject property "so long as state law recognizes the underlying property right"); *Joing v. O & P Partnership* (*In re Joing*), 82 B.R. 500 (Bankr. D. Minn. 1987) (where no equity in property existed after mortgages were satisfied in the foreclosure sale, subsequent sale of property by purchaser at foreclosure sale did not have to turn over profit to the debtor under MINN. STAT. § 580.10).

With respect to whether the bankruptcy court had authorized Judgment Holders to register their judgments, the record does not support such a conclusion.[12]  The bankruptcy court had not granted Judgment Holders relief from the automatic stay, and Judgment Holders have not identified any other order in the record that expressly gave them the necessary authority.  Moreover, as discussed above, the January 27, 2010 settlement order did not give them such authority, and there was no abandonment that obviated the need for court approval.

We acknowledge various equitable issues may be gleaned from the record, including *inter alia*, whether and to what extent certain of Trustee's decisions–including his decision not to ask the bankruptcy court to vacate the settlement order authorizing the sale of Northridge, his decision not to redeem Northridge from foreclosure, and his decision not to challenge Judgment Holders' post-petition actions as being in violation of the automatic stay–might affect the outcome in this case.  However, those issues are not before us and would in any event be better considered on remand and on a more thoroughly developed record.

## 11 U.S.C. § 550

When the bankruptcy court avoids a post-petition lien against property of the bankruptcy estate, the lien is automatically preserved for the benefit of the bankruptcy estate. 11 U.S.C. § 551.  If simply preserving the lien will not restore the bankruptcy estate's pre-transfer financial condition, the trustee may recover the property

---

[12]  Judgment Holders have the burden of showing the post-petition transfers were valid.  Fed.R.Bankr.P. 6001.

transferred or its value pursuant to 11 U.S.C. § 550(a). *Seaver v. Mortgage Elec. Registration Sys.* (*In re Schwartz*), 383 B.R. 119, 125 (B.A.P. 8th Cir. 2008); s*ee, e.g., Stalnaker v. DLC, Ltd. (In re DLC, Ltd.)*, 295 B.R. 593, 602, 602 n.7 (B.A.P. 8th Cir. 2003), *aff'd*, 376 F.3d 819 (8th Cir. 2004) (a trustee need only resort to a recovery of the value of a transfer under § 550(a) if avoidance of the transfer alone is insufficient to restore the bankruptcy estate). The selected transferee, *see* § 550(a)(1) or (2), must reimburse the bankruptcy estate for receiving *and selling* an interest in property that should have remained part of the bankruptcy estate. *Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 846 (8th Cir. 2010) (emphasis added). In the absence of a good faith transferee, the bankruptcy estate recovers the transferred property as well as any improvement in the property transferred. *Doeling v. Grueneich* (*In re Grueneich*), 400 B.R. 688, 694-695 (B.A.P. 8th Cir. 2009); and *Joseph v. Madray* (*In re Brun*), 360 B.R. 669 (Bankr. C.D. Cal. 2007)(a trustee's recovery under § 550(a) is not limited to equity on the date of the transfer; any appreciation not attributable to the actions of a good faith transferee inure to the benefit of the bankruptcy estate). An improvement to the property may specifically include "payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee[.]" 11 U.S.C. § 550(e)(2)(D).

The bankruptcy court assumed Judgment Holders' post-petition registration of the judgments did not create any value recoverable under § 550(a) because there was no equity in Northridge on the dates Judgment Holders' judgments were registered. However, the registration of the judgments also created judgment liens, which § 551 preserved for the bankruptcy estate. Those judgment liens allowed New Buffalo to redeem at foreclosure, capture the increase in equity, and then sell the property to Palladium, transforming New Buffalo's unsecured pre-petition claim into an equity position.

On remand, the bankruptcy court will need to determine whether avoiding the post-petition registration of Judgment Holders' judgments and preserving those judgments and attendant liens under § 551 will restore the bankruptcy estate to its prior financial condition or whether a money judgment under § 550(a) is necessary

-12-

to accomplish this.[13]  *DLC, Ltd.,* 295 B.R. at 602, 602 n.7, 607 (a recovery of the transferred property or its value under § 550 is necessary only if avoidance of the security interest is not sufficient; the "purpose and thrust of section 550 is to restore the debtor's financial condition to the state it would have been had the transfer not occurred"); *Schnittjer v. Linn Area Credit Union* (*In re Sickels*), 392 B.R. 423, 426-27 (Bankr. N.D. Iowa 2008) (recovery under § 550(a) is necessary only when avoidance is inadequate; "recovery under § 550 imparts a notion that a possessory interest in property exists while preservation under § 551 is by its very nature only applicable to nonpossessory interests.").

CONCLUSION

The bankruptcy court correctly concluded the subject liens were not avoidable under § 547.  However, it erred in concluding Judgment Holders' post-petition registration of their judgments and the attendant creation of judgment liens against Northridge were not avoidable post-petition transfers of property of the bankruptcy estate under § 549(a), and it did not fully assess whether the bankruptcy estate is entitled to a recovery under § 550(a) because § 551's automatic preservation of the avoidable judgment liens will not restore the bankruptcy estate's financial condition

---

[13]    Judgment Holders generally pled good faith but did not specifically raise it under § 550(b) or (e) or meaningfully discuss it in their summary judgment briefs.  If the bankruptcy court finds Trustee is entitled to a recovery under § 550(a), it will be Judgment Holders' burden to show they were good faith transferees under § 550(b) or (e).  *See Brown v. Third National Bank* (*In re Sherman*), 67 F.3d 1348, 1357 (8th Cir. 1995) (a transferee has knowledge of the voidability of a transfer if he knew facts that would lead a reasonable person to believe the property transferred was recoverable); *Grueneich*, 400 B.R. at 693-94 ("Whether a transferee has such knowledge [to place him on inquiry notice about the debtor's possible insolvency] is determined objectively, with a focus on what a transferee knew or should have known, not on the transferee's actual knowledge."); *Sullivan v. Gergen* (*In re Lacina*), 451 B.R. 485, 491 (Bankr. D. Minn. 2011) (avoidable transfer defendant has burden to prove it is a good faith transferee); and *Feltman v. Warmus* (*In re American Way Service Corp.*), 229 B.R. 496, 525-26 (Bankr. S.D. Fla. 1999) (transferees have burden of proof to show good faith under § 550(b) or (e)).

to what it was before Judgment Holders' judgments were registered on Northridge's certificate of title. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

_____