In re Dennis E. HECKER, Debtor.

Randall L. Seaver, Trustee, Plaintiff,

v.

New Buffalo Auto Sales, LLC, f/k/a Buffalo Chrysler, LLC, Maurice J. Wagener, Palladium Holdings, LLC, and GMAC Mortgage Corporation, Defendants.

Bankruptcy No. 09–50779.
Adversary No. 10–5027.

United States Bankruptcy Court,
D. Minnesota.

Jan. 24, 2013.

Matthew R. Burton, Leonard O'Brien et al., Minneapolis, MN, for Plaintiff.

James M. Lockhart, Karla M. Vehrs, William P. Wassweiler, Lindquist & Vennum PLLP, Minneapolis, MN, Benjamin B. Bohnsack, Rinke Noonan Ltd., St. Cloud, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This adversary proceeding came on for trial on November 20, 2012. Matthew R. Burton appeared for the plaintiff. William P. Wassweiler and Karla M. Vehrs appeared on behalf of New Buffalo Auto Sales, LLC, and Palladium Holdings, LLC; Mychal A. Bruggeman appeared on behalf of Maurice J. Wagener and David J. Meyers appeared on behalf of GMAC Mortgage Corporation.

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (O).

## FACTS

1. When he filed his petition, Dennis E. Hecker owned real property located at 1615 Northridge Drive in Medina, Minnesota, which was registered property under Minnesota's Torrens law.

2. The first mortgage in favor of U.S. Bank in the original principal amount of $250,000.00 was registered on Northridge's Certificate of Title on November 10, 1999.

3. The second mortgage in favor of Mortgage Electronic Registration Systems, Inc. as mortgagee in the original principal amount of $650,000.00 was regis-

tered on Northridge's Certificate of Title on December 17, 2001.

4. The second mortgage identifies GMAC Mortgage Corporation as the "Lender" and MERS as the "Mortgagee."

5. The third mortgage in favor of GMAC in the original principal amount of $250,000.00 was registered on Northridge's Certificate of Title on December 17, 2001.

6. The third mortgage identified GMAC and MERS as co-mortgagees and specified that MERS is "acting solely as nominee for GMAC and GMAC's successors and assigns."

7. Neither MERS nor GMAC registered a request for notice of mortgage foreclosure on the Certificate of Title pursuant to Minn.Stat. § 580.032.

8. A federal tax lien in the amount of $2,612,791.87 was filed against Hecker in the Hennepin County Recorder's Office in April 2009.

9. On April 30, 2009, Condor Fireplace and Stone Company registered a mechanic's lien in the amount of $8,724.45 on Northridge's Certificate of Title.

10. Northridge was also encumbered by a Hennepin County tax lien in the amount of $10,426.00.

11. Altogether, the encumbrances totaled over $3,700,000.00.

12. The Koch Group, LLC obtained a judgment against Hecker in the Hennepin County District Court in the amount of $813.67 on April 29, 2009.

13. New Buffalo Auto Sales, LLC and Maurice J. Wagener jointly obtained a $324,938.72 judgment against Hecker in the Hennepin County District Court on May 7, 2009.

14. Wagener is both a member and the chief manager of New Buffalo and was aware of Hecker's bankruptcy case.

15. Hecker filed his petition on June 4, 2009.

16. Randall L. Seaver was appointed trustee in Hecker's bankruptcy case on June 5, 2009.

17. On June 7, 2009, notice of Hecker's bankruptcy case was served on a list of creditors that included GMAC.

18. In his schedules, Hecker listed the value of Northridge at $1,100,000.00.

19. The trustee concluded that Northridge had no equity and was of no value to the bankruptcy estate.

20. I granted U.S. Bank relief from the automatic stay on September 28, 2009. The motion was not opposed.

21. U.S. Bank registered a notice of foreclosure on Northridge's Certificate of Title on November 17, 2009.

22. While residing at Northridge, Hecker's girlfriend, Christi Rowan, was served with a notice of U.S. Bank's foreclosure on December 11, 2009.

23. In an e-mail dated December 11, Rowan requested the payoff amount of the loan and indicated that Hecker was aware of the impending foreclosure.

24. Both Hecker and Rowan called U.S. Bank later that day to discuss the foreclosure.

25. While Hecker was not personally served with a notice of the foreclosure he had actual knowledge of U.S. Bank's intent to foreclose.

26. On December 16, 2009, in four separate transactions, $75,750.00 was deposited into Skolnick & Sheff P.A.'s (Hecker's attorneys) bank account from four different irrevocable trust accounts, one of which is named the Hecker Irrevocable Trust.

27. The trustee received a check dated December 16, 2009 for $75,000.00 from

Skolnick & Sheff with "Ralph Thomas" listed in the memo line.

28. On January 7, 2010, the trustee filed a motion for approval of a settlement with Hecker, Rowan and Ralph Thomas— a business associate of Hecker's. The agreement called for, *inter alia*, a $75,000.00 payment from Thomas to the trustee in exchange for the bankruptcy estate's interest in Northridge.

29. On January 8, 2010, a notice of the foreclosure was mailed to MERS at the address of record listed on Northridge's Certificate of Title. Notice was not mailed to GMAC.

30. By a credit bid, U.S. Bank purchased Northridge for $213,263.00 at the sheriff's foreclosure sale on January 19, 2010. The six-month redemption period began on the day of the sale under Minn. Stat. § 580.23.

31. The trustee did not monitor Northridge's Certificate of Title or any actions relating to U.S. Bank's foreclosure.

32. The sheriff's certificate of sale to U.S. Bank was registered on Northridge's Certificate of Title on January 19, 2010.

33. I approved the settlement between the trustee and Thomas on January 27, 2010.

34. The trustee delivered a trustee's deed in favor of Thomas to William Skolnick, the attorney who was representing both Hecker and Thomas.

35. Neither Thomas nor Skolnick registered the trustee's deed and the Registrar of Titles did not issue a Certificate of Title to Thomas. Northridge remained registered to Hecker.

36. Without opposition, I granted MERS and GMAC relief from the automatic stay on February 23, 2010.

37. In a letter dated and filed on March 18, 2010, the trustee indicated that the $75,000.00 did not come from Thomas and that Thomas was unaware of the settlement agreement until he read about it in the newspaper. The letter asserted that the $75,000.00 likely came from Hecker's children's and grandchildren's trust accounts.

38. The trustee did not take any steps to unwind the settlement agreement or recover the title to Northridge.

39. As of April 2010, Northridge's fair market value was $813,263.00.

40. New Buffalo and Wagener registered their joint judgment on Northridge's Certificate of Title on April 20, 2010.

41. The Koch Group registered its judgment on Northridge's Certificate of Title on April 22, 2010.

42. New Buffalo, Wagener and the Koch Group did not seek or obtain relief from the automatic stay before registering their judgments.

43. The Koch Group assigned its judgment to Palladium Holdings, LLC on June 11,2010.

44. The Koch Group did not seek or obtain relief from the automatic stay prior to assigning its judgment.

45. In June 2010, Palladium began title work on Northridge to determine whether it should pursue redeeming from U.S. Bank's foreclosure.

46. On June 23, 2010, New Buffalo registered its intent to redeem on Northridge's Certificate of Title and delivered notice of such to the Hennepin County Sheriff.

47. Palladium first learned of Hecker's bankruptcy case in early July 2010.

48. On July 8, 2010, Palladium registered both the assignment from Koch Group and its intent to redeem based on that judgment on Northridge's Certificate

of Title. Palladium delivered notice of its intent to redeem to the Hennepin County Sheriff.

49. No other creditor registered its intent to redeem as required by Minn.Stat. § 580.24.

50. On July 14, 2010, Palladium received a title commitment for Northridge.

51. Up to this point, the trustee thought that he disposed of Northridge and that the bankruptcy estate no longer held any interest in Northridge.

52. Troy Van Beek, Palladium's attorney, phoned the trustee on July 15, 2010. During that conversation:

 a. Van Beek told the trustee that Palladium "was engaged in some sort of redemption process with Northridge";

 b. The trustee learned for the first time that GMAC was not redeeming; and

 c. The trustee asked Van Beek to keep him up to date.

53. As the representative of the estate, the trustee's redemption period from the U.S. Bank foreclosure sale expired on July 19, 2010.

54. The Koch Group judgment—assigned to Palladium—was satisfied via cash payment on July 20, 2010.

55. On July 22, 2010, New Buffalo redeemed from the U.S. Bank foreclosure sale for $218,075.30.

56. New Buffalo and Palladium entered into a purchase agreement, promissory note, mortgage and quit claim deed—all dated July 22, 2010.

57. New Buffalo sold Northridge to Palladium for $618,075.30. Palladium paid new Buffalo $80,000 in cash and provided a mortgage on Northridge in the amount of $320,000.00.[1]

58. Sometime between July 19 and July 22, Van Beek and the trustee had an additional conversation in which they discussed the following:

 a. Van Beek asked the trustee if he was going to do anything to stop the redemption and the trustee indicated he would not;

 b. The trustee told Van Beek that one of his jobs as trustee is to collect money for the estate from whatever sources possible and he would continue to do so;

 c. The trustee told Van Beek that he would not assert that the automatic stay precluded Palladium from redeeming; but

 d. The trustee did not tell Van Beek whether he would bring a transfer avoidance action against Palladium.

59. The trustee registered a notice of the bankruptcy case on Northridge's Certificate of Title on July 23, 2010.

60. The trustee commenced this adversary proceeding against New Buffalo and Wagener asserting a claim under 11 U.S.C. § 547 and registered a notice of *lis pendens* on the Certificate of Title on July 26, 2010.

61. New Buffalo registered its $320,000.00 mortgage against Northridge on July 28, 2010.

62. On July 29, 2010, Palladium registered a certificate of redemption for $561,500.00 on Northridge's Certificate of Title.[2]

---

1. These amounts are part of the parties' stipulation of facts, but do not seem to add up.

2. This amount was also in the parties' stipulated facts and registered on the Certificate of Title.

63. The trustee amended his complaint on August 9, 2010, adding Palladium as a defendant and a claim under 11 U.S.C. § 549.

64. MERS made a claim to its title insurance company, Investors Title Insurance Company, on August 25, 2010.

65. The trustee filed a second amended complaint on October 12, 2010, adding an additional claim under § 549 and a request for declaratory relief.

66. The trustee made no claims under 11 U.S.C. § 362.

67. Upon request by the trustee, Thomas executed a quit claim deed conveying all of his interest in Northridge to the trustee on November 23, 2010.

68. On January 4, 2011, Investors denied MERS' title insurance claim on account of MERS' failure to redeem from U.S. Bank and its failure to notify Investors that U.S. Bank foreclosed on Northridge.

69. On March 16, 2011, GMAC published a notice of planned foreclosure sale based on one of its extinguished Northridge mortgages.

70. New Buffalo and Palladium obtained an injunction in state court against GMAC's foreclosure sale.

71. GMAC filed a petition and an amended petition in state court naming New Buffalo and Palladium as defendants and asserting U.S. Bank's foreclosure was invalid and that New Buffalo and Palladium maintained no interest in Northridge.

72. Palladium has incurred $41,509.00 in expenses through November 2, 2012 to insure, maintain and repair Northridge.

**January 19, 2011 Hearing**

This adversary proceeding first came on for hearing on cross-motions for summary judgment. The trustee sought to avoid the judgments against Northridge as preferential transfers under § 547(b) and to avoid the post-petition registration of judgments under § 549. The trustee also wanted to preserve the value of the judgments, the judgment liens and the subsequent transfers for the bankruptcy estate under §§ 550 and 551.

The defendants argued that the § 547 claim failed because the judgments were not a preference and that the § 549 claim failed for three reasons: 1) the liens were not registered on property of the estate; 2) any interest the estate had in Northridge had no value and 3) the trustee did not have standing under § 550. Finally, the defendants argued that no action was necessary to restore the estate to its financial position absent lien creation. I denied the trustee's motion and granted the defendants' motions.

Among other things, I ruled that under Minnesota's Torrens law Northridge was transferred upon the trustee granting the trustee's deed and that Thomas' failure to register the deed did not invalidate the transfer. I held that due to this transfer, the trustee had divested the estate of its interest in Northridge and there was no transfer of estate property when the judgment liens were recorded. I additionally ruled that I had authorized both the transfer to Thomas and relief from the stay to U.S. Bank so the subsequent transactions—foreclosure, sale, redemption, etc.— were also authorized. Alternatively, I held that if there was a transfer of the debtor's interest in property, it had no value because of the encumbrances. The trustee appealed to the Bankruptcy Appellate Panel.

**BAP Ruling**

The BAP affirmed the grant of summary judgment on the preference claim, but reversed on the unauthorized post-

petition transfer claim.[3] The BAP stated that under § 549(a), a transfer, including the creation of a lien, may be avoided if: 1) the subject property was property of the bankruptcy estate; 2) the property was transferred; 3) the transfer was made post-petition; and 4) the transfer was not authorized by the Bankruptcy Code or the bankruptcy court. *Seaver v. New Buffalo Auto Sales (In re Hecker)*, 459 B.R. 6, 11–12 (8th Cir. BAP 2012). The BAP discussed factors 1 and 4:

Factor 1—Property of the estate

The BAP held that Northridge was still property of the estate at the time the judgments were registered for two reasons: 1) Minnesota's Torrens law requires registration for a valid conveyance—because Thomas did not register the trustee's deed—Northridge was not effectively transferred to Thomas and (2) after the foreclosure sale, the bankruptcy estate maintained at least a redemption interest in Northridge. *Id.* at 13.

Factor 4—Authorization

The BAP stated that because I did not grant the defendants relief from the automatic stay and the defendants did not point to any other source of authority allowing registration of their judgment liens, the record did not support my conclusion that the transfer was authorized. *Id.* at 13–14.

## ANALYSIS

### Remand

The BAP remanded this proceeding with two charges. First, I am to consider equitable issues, specifically, the trustee's inactions that could be raised by New Buffalo

and Palladium as equitable defenses. *Id.* at 14. Second, I am to determine "whether avoiding the post-petition registration of Judgment Holders' judgments and preserving those judgments and attendant liens under § 551 will restore the bankruptcy estate to its prior financial condition or whether a money judgment under § 550(a) is necessary to accomplish this." *Id.* at 14–15.

### Equitable Considerations

 The trustee didn't seek to vacate the settlement order, redeem from the foreclosure sale or challenge the defendants' failure to seek relief from stay. In addition to the trustee's inactions, the parties argued about each other's deviously illicit intent. Section 549 contains no equitable defenses, thus, these considerations reside outside of my equitable authority. *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 432–433 (N.D.Ill.1995) (illustrating that the bankruptcy court's equitable powers are restricted to the confines of the Code and the plain language of § 549 forecloses equitable considerations).

 Assuming *arguendo* that I could entertain these equitable considerations, based on the stipulated facts and my observation of the witnesses during testimony, I find that neither party attempted to induce the other to act in a manner contrary to its interests nor did either party operate in a devious or covert manner. The parties stipulated that Palladium notified the trustee of New Buffalo's intent to redeem before the trustee's redemption period expired. I find that the trustee did not misrepresent his intentions to Van Beek, has stayed true to his word and is

---

**3.** As the BAP stated in a footnote, the issue of whether Wagener received any proceeds in these transactions was not before the BAP. *Seaver v. New Buffalo Auto Sales (In re Hecker)*, 459 B.R. 6, 9 n. 4 (8th Cir. BAP 2011).

Therefore, my original holding that he did not receive any proceeds was undisturbed. Any reference to the defendants is a reference to New Buffalo and Palladium only.

pursuing this matter merely to fulfill his duties as the trustee. Frankly, I am sure the novel claims advanced by the trustee in this adversary proceeding had not occurred to him at the time of the phone conversations.

The parties also argued several additional points including: 1) whether there was a transfer of estate property; 2) whether the automatic stay was violated and 3) whether GMAC's claims have merit. Before determining the remedy necessary to return the bankruptcy estate to its prior financial condition, I will briefly address these additional arguments:

### 1. Transfer of estate property

The defendants argue that there was no transfer of property of the estate. The estate is comprised of all of the debtor's legal and equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). I granted U.S. Bank relief from the automatic stay to foreclose. When U.S. Bank foreclosed and purchased Northridge at the foreclosure sale, the estate's legal and equitable interests in Northridge were drastically altered. Upon foreclosure, under Minnesota law, the estate retained the following property interests: right to possession, rents and profits during the redemption period, *Mutual Ben. Life Ins. Co. v. Frantz Klodt & Son, Inc.,* 306 Minn. 244, 247, 237 N.W.2d 350 (1975), and the right to redeem. Minn.Stat. § 580.23 Subd. 1. The property interest purchased by U.S. Bank at the sheriff's foreclosure sale is somewhat anomalous. *Allis v. Foley,* 126 Minn. 14, 21, 147 N.W. 670 (1914). Had the redemption period expired and no judgment liens been registered, legal title would have simply passed to and vested in U.S. Bank relating back to the effective date of the mortgage. *Id.*

As the saying goes, timing is everything. When New Buffalo registered its judgment—after U.S. Bank purchased Northridge at the foreclosure sale—the resulting attendant lien did not affect the estate's interests in Northridge; the estate's interests in possession, rents and profits and the estate's right to redeem remained static between foreclosure and expiration of the estate's redemption period. *See E.A. Martin Mach. Co. v. Williams (In Re Newman),* 875 F.2d 668, 671 (8th Cir.1989) (holding that there was no transfer of estate property where the transfer to be avoided involved partnership property and the debtor maintained no interest aside from right to demand his individual partner's share). The estate's interests in Northridge were altered only upon the trustee allowing the estate's redemption period to expire.

On the other hand, absent lien creation, upon expiration of the estate's redemption period, Northridge's legal title would have vested in U.S. Bank. U.S. Bank's anomalous interest was the interest affected when New Buffalo created its lien. Through the lien, New Buffalo prevented legal title from vesting in U.S. Bank by redeeming Northridge. However, the BAP ruled that there was a transfer of property of the estate. Since that is the law of the case I am not free to revisit the issue.

### 2. Automatic stay

In my view, the automatic stay was not violated because, as explained above, the interest altered by the defendants' liens was not property of the estate. But because the trustee did not make any claims under § 362, whether the stay was violated or not is irrelevant.

### 3. GMAC's claims

GMAC stipulated to the fact that its loans were extinguished but argued, *inter*

*alia,* that U.S. Bank did not properly serve Hecker with notice of foreclosure under Minnesota law. I doubt GMAC has standing in this proceeding. Regardless, based on the stipulated facts and Minnesota's Rules of Civil Procedure, I find that the service provided Hecker was appropriate. Minn. R. Civ. P. 4.03(a). GMAC's claims are without merit.

## REMEDY

### Prior financial condition

■ Turning to the issue of what award is required to return the estate to its prior financial condition, the trustee asked for either the award of Northridge to the estate, or alternatively, $400,000.00 from Wagener and New Buffalo and $813,263.00 from Palladium for a total money judgment of $1,213,263.00. It is curious that the trustee stipulated to Northridge's value of $813,263.00 at the time the judgment liens were created yet has asked for a total of $1,213,263.00 to make the estate whole. The trustee is only entitled to one satisfaction under § 550. 11 U.S.C. § 550(d). Even if the estate required a payment, the payment necessary, at most, would be Northridge's stipulated value of $813,263.00.

■ Section 550(a) states, "to the extent that a transfer is avoided under section ... 549 ... the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property." 11 U.S.C. 550(a). The policy reason behind any award in favor of the trustee is to return the estate to its prior financial condition had New Buffalo and Palladium never entered the picture. *See Halverson v. Le Sueur State Bank (In re Willaert)*, 944 F.2d 463, 464 (8th Cir.1991) (stating that "[t]he fundamental purpose of section 547(b)'s avoidable preference provision is to restore the bankruptcy estate to its pre-preferential transfer condition. Section 550(a) is the vehicle that allows the trustee to accomplish this."). While *Willaert* is a preference case, the BAP has correctly held that the same principal applies here.

■ The evidence is clear and the trustee concedes that the estate's interest in Northridge was legal only; it had a right of redemption from the U.S. Bank foreclosure sale. Creation of the judgment lien did not affect the estate's right to redeem. Regardless, due to the amount of the encumbrances on Northridge, the estate's right of redemption held no monetary value. Because it held no value, the trustee determined it was appropriate to let this right expire. It was the trustee's failure to redeem that finally terminated the last of the estate's interests in Northridge.

I am not sure what effect avoiding the creation of New Buffalo's judgment lien would have. I am confident it would provide no benefit to the estate. Since the transfer the BAP held occurred resulted in no loss of value to the estate, it is not necessary to restore any value. A monetary award would not serve *Willaert*'s goal of restoring the estate to its pretransfer condition, but rather would result in a windfall to the estate.

## ORDER

IT IS ORDERED:

The plaintiff shall recover nothing from the defendants.

LET JUDGMENT BE ENTERED ACCORDINGLY.