# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 08-6048

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| James B. Grueneich, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Gene W. Doeling, as Bankruptcy | * | |
| Trustee, | * | |
| | * | Appeal from the United States |
| Plaintiff - Appellee, | * | Bankruptcy Court for the District of |
| | * | Minnesota |
| v. | * | |
| | * | |
| Gerald G. Grueneich and Lucille F. | * | |
| Grueneich, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: February 6, 2009
Filed: March 11, 2009

_____

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

Defendants Gerald G. Grueneich and Lucille F. Grueneich appeal the bankruptcy court's decision avoiding the transfer of certain real property received from the Debtor within a year before the Debtor's bankruptcy petition date and

ordering the Defendants to pay the Trustee the amount of a mortgage they placed on the property after they acquired it.[1] For the reasons stated below, we affirm the decision of the bankruptcy court in all respects.[2]

## I. STANDARD OF REVIEW

Conclusions of law are reviewed *de novo*.[3] Findings of fact are reviewed for clear error.[4] A factual finding is "clearly erroneous" when a reviewing court is left with the definite and firm conviction that a mistake has been committed.[5] The clearly erroneous standard does not entitle a reviewing court to reverse the trier of fact simply because it would have decided the case differently.[6] "[W]hen there are two permissible views of the evidence, we may not hold that the choice made by the trier of fact was clearly erroneous."[7] "Moreover, where the factual findings call for an assessment of witness credibility, even greater deference to the trier of fact is demanded."[8]

---

[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b).

[2] The Honorable Dennis O'Brien, United States Bankruptcy Court for the District of Minnesota.

[3] *Kelly v. Jeter* (*In re Jeter*), 257 B.R. 907, 909 (B.A.P. 8th Cir. 2001).

[4] *Gourley v. Usery* (*In re Usery*), 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank* (*In re Broadview Lumber Co., Inc.*), 118 F.3d 1246, 1250 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[5] *Handeen v. LeMaire* (*In re LeMaire*), 898 F.2d 1346, 1349 (8th Cir. 1990).

[6] *Id.*

[7] *Id.*

[8] *Id.*

2

## II. BACKGROUND

Between 1996 and 2006, the Debtor, James B. Grueneich, built and sold approximately eight single family homes individually and through several business entities – JAG of Garfield, Inc., Garfield Homes, Inc., and JAG Land, LLC – in which the Debtor held a 50% interest.

The Debtor purchased the real property ("Property") at issue in 2005 for $146,000, presumably for future development, but no homes were ever built on the Property. The Debtor financed $65,000 of the purchase price with a mortgage on the Property.

In 2006, the Debtor and the other 50% shareholder in JAG of Garfield, Inc., Garfield Homes, Inc., and JAG Land, LLC, decided to dissolve their business relationship. To that end, the Debtor bought out the other shareholder's interest for $80,000 in cash which the Debtor borrowed from another source.

Shortly thereafter, the Debtor informed the Defendants (his parents) that he would not be able to make payments on the $65,000 mortgage encumbering the Property due to his obligation on the $80,000 loan he had obtained to finance the buyout of his business partner. The Defendants testified that they did not know of the Debtor's financial problems before this, but they admitted at the trial that they had paid the real estate taxes and CRP expenses related to the Property soon after the Debtor purchased it in 2005.

When the Debtor told the Defendants that he would be unable to make the mortgage payments, the three arranged for the transfer of the Property to the Defendants. The Defendants argued at trial and maintain in this appeal that they purchased the property for $115,600 – $65,000 to be paid by refinancing the existing mortgage on the Property, and $50,600 in debt cancellation for amounts allegedly due

3

the Defendants for construction work performed for the Debtor on his home-building projects. But the Defendants never billed the Debtor for any of this work, nor did they ever present him with an accounting of any kind as to the charges they expected to be paid in connection with any of the individual projects. And no amounts for services rendered by the Defendants were ever invoiced by the Debtor against any of the projects.

On September 18, 2006, a quit claim deed transferring the Property from the Debtor to the Defendants was filed in the county where the Property is located.[9] Defendant Lucille Grueneich certified on the deed: "I certify that the full consideration paid for the property described in this deed is $65,000.00." The Debtor's Statement of Financial Affairs filed with the bankruptcy court also indicated that he sold the Property to the Defendants for $65,000. The Defendants refinanced the Debtor's mortgage on the Property on the same day.

The Debtor filed his Chapter 7 bankruptcy petition on March 21, 2007. On December 11, 2007, the Trustee of the Debtor's bankruptcy estate, Gene W. Doeling, filed the underlying adversary proceeding to avoid the transfer of the Property as a fraudulent transfer under 11 U.S.C. § 548 or as a preferential transfer under 11 U.S.C. § 547 to the extent that the Property was transferred in payment of the Debtor's alleged $50,600 debt owed to the Defendants for work they had done.

After an evidentiary hearing, the bankruptcy court held that the transfer of the Property to the Defendants was fraudulent and avoidable under § 548 because the Debtor received less than reasonably equivalent value for the Property. The bankruptcy court found that the Debtor's and the Defendants' testimony that the Defendants' prior services constituted consideration for the transfer was not credible

---

[9] The deed was actually signed on April 6, 2006, but it wasn't recorded until September 18, 2006. No explanation has been given for the delay in recording the deed.

4

or supported by the evidence, and that the only consideration the Defendants provided was the $65,000 from the promised refinancing. The bankruptcy court found further that the Defendants failed to establish that they were good faith transferees, and that the Defendants are liable to the Trustee for the amount of the refinanced mortgage. This appeal followed.

## III.  DISCUSSION

The three issues on appeal are: 1) whether the bankruptcy court erred in finding that the Debtor did not receive reasonably equivalent value for the Property; 2) whether the bankruptcy court erred in finding that the Defendants were not "good faith transferees" for purposes of 11 U.S.C. §§ 548 and 550; and 3) whether the bankruptcy court erred in ordering the Defendants to pay the estate the amount of the refinanced mortgage on the Property.  As noted  above, we affirm the bankruptcy court on all three issues.

**A.     The bankruptcy court's finding that the Debtor did not receive reasonably equivalent value for the Property is not clearly erroneous.**

The bankruptcy court found that the Debtor did not receive reasonably equivalent value for the Property because the undisputed value of the property at the time of the transfer was approximately $119,000 and the only benefit the Debtor received was the Defendants' payment of the existing $65,000 mortgage on the Property.[10]  This finding is supported by the evidence and will not be overturned as clearly erroneous.

---

[10] The Defendants do not challenge the bankruptcy court's conclusion that $65,000 does not constitute reasonably equivalent value for property worth $119,000.  Additionally, the exact amount of the mortgage at the time of the transfer was $63,129.10.

The deed transferring the Property from the Debtor to the Defendants recites that the consideration for the transfer was $65,000, the Debtor stated in his Statement of Financial Affairs that he transferred the Property for $65,000, and we defer to the bankruptcy court's decision to discount the Debtor's and Defendants' testimony that the other $50,600 of value they allegedly gave the Debtor for the property was in payment for services provided to the Debtor on past construction projects. In sum, there is nothing in the record that would leave us with the definite and firm conviction that the bankruptcy court was mistaken in its determination that the Debtor did not receive reasonably equivalent value for the Property.

**B.      The Bankruptcy Court's finding that the Defendants were not "good faith transferees" for purposes of 11 U.S.C. §§ 548 and 550 is not clearly erroneous.**

For purposes of 11 U.S.C. §§ 548 and 550, the transferee of an allegedly fraudulent transfer has the burden of proving good faith.[11] The bankruptcy court found that the Defendants failed to carry this burden. This finding is also supported by the evidence and will not be overturned as clearly erroneous.

Good faith is not defined in the Bankruptcy Code; it is determined on a case-by-case basis.[12] A transferee does not act in good faith if he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.[13] Whether a transferee has such knowledge is determined objectively, with a focus on

---

[11] *See In re Hannover Corp.*, 310 F.3d 796, 799 (5th Cir. 2002) (§ 548); *Hayes v. Palm Seedlings Partners-A* (*In re Agric. Research & Tech. Group, Inc.*), 916 F.2d 528, 535 (9th Cir.1990) (§ 550).

[12] *In re Sherman,* 67 F.3d 1348, 1355 (8th Cir. 1995).

[13] *Id.* (citing *In re Anchorage Marina, Inc.*, 93 B.R. 686, 693 (Bankr. D. N.D. 1988)).

what a transferee knew or should have known, not on the transferee's actual knowledge.[14]

In this case, the bankruptcy court's determination that the Defendants were not good faith transferees was based in large part on the factual finding that the Defendants knew about the Debtor's insolvency at the time of the transaction. That finding is supported by evidence in the record, including Defendant Lucille Grueneich's testimony[15] stating that the Defendants "understood" that the Debtor was selling the Property because he couldn't afford to make the mortgage payments. Defendant Lucille Grueneich also testified that she and her husband had paid the property taxes and CRP expenses[16] from the time the Debtor first acquired the Property, suggesting that the Defendants knew of the Debtor's financial difficulties for some time prior to the transfer of the Property. This evidence amply satisfies the standard that the Defendants knew or should have known that the Debtor was insolvent at the time of the transfer.

**C.    The Bankruptcy Court's holding that the Defendants are liable to the Trustee for the value of the refinanced mortgage is not erroneous.**

Although the bankruptcy court did not explain in detail the rationale behind its conclusion that the Defendants should not be "credited" with the amount of the

---

[14] *Id.* (citing *In re Agricultural Research & Technology Group, Inc.*, 916 F.2d 528, 535-36 (9th Cir. 1990)).

[15] The testimony on this point consisted of Defendant Lucille Grueneich reading a response to an interrogatory question served on the Defendants in a separate matter. (Appellant App. p. 49).

[16] The Debtor testified that he was obligated to "spray" the Property as a condition of receiving CRP (Conservation Reserve Program) funds. The Defendants paid for this spraying.

$65,000 mortgage because they were not good faith transferees, it is supported by the law.

As a general proposition, the purpose of 11 U.S.C. § 548, in conjunction with § 550, is to return the estate to the position it would have been in if a fraudulent transfer had not occurred.[17]  Relying on this general principle, the Defendants argue that the bankruptcy court erred in holding them liable for the amount of the refinanced mortgage.  They assert that the estate is not entitled to recover anything more than the equity in the Property.  To permit the estate to recover the equity in the Property *and* the value of the mortgage, the Defendants argue, constitutes a double recovery prohibited by 11 U.S.C. § 550(d).[18]

The Defendants' analysis, however, glosses over the effect the bankruptcy court's finding that the Defendants were not good faith transferees has on their liability under § 550.  The Trustee's recovery of the Property and the value of the mortgage is not a "double" recovery prohibited by § 550; rather, the Trustee is simply recovering the Property and an "improvement" to the Property to which it is entitled under § 550(e).  Section 550(e) provides:

> (e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of–
>> (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
>> (B) *any increase in the value of such property as a result of such improvement, of the property transferred.*

---

[17] *Seaver v. Mortgage Electronic Registration Systems, Inc.* (*In re Schwartz*), 383 B.R. 119, 125 (B.A.P. 8th Cir. 2008).

[18] Section 550(d) states: "The trustee is entitled to only a single satisfaction under subsection (a) of this section."

(2) In this subsection, "improvement" includes--
    (A) physical additions or changes to the property transferred;
    (B) repairs to such property;
    (C) payment of any tax on such property;
    (D) *payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee*; and
    (E) preservation of such property[19]

The terms of the statute and, in particular, the italicized language, refer only to the protection, *i.e.,* a lien, afforded a good faith transferee for the value of any improvement in the property while the transferee was in possession of the property, but the logical extension and effect of this provision is that the *estate* is entitled to the benefit of any improvement in property transferred in the *absence* of good faith.

In this case, the property was "improved" when the Defendants satisfied the Debtor's mortgage on the Property. The fact that the Defendants satisfied that lien by obtaining a new mortgage does not change the effect of the improvement, as ephemeral as it might have been. If the Defendants had paid off the mortgage with cash or with proceeds from a loan secured by separate property, there would be no question that, in the absence of a finding of good faith, the estate would be entitled to the benefit of that improvement. Whether an estate benefits from such a transaction should not depend on the source of the money used to accomplish the improvement. Hence, the benefit of the improvement that resulted from the satisfaction of the mortgage on the Property inures to the Debtor's bankruptcy estate, notwithstanding the fact that the Defendants used the same property as collateral to accomplish that improvement.

The result is the same, and perhaps even more compelling, if the Defendants' refinancing of the mortgage is analyzed as the consideration given for the Property,

---

[19] 11 U.S.C. § 550(e) (West 2008) (emphasis added).

as the Debtor and Defendants characterized it, rather than as an improvement, as the bankruptcy court characterized it.[20]

Analyzing the refinancing of the mortgage as the consideration for the transfer implicates 11 U.S.C. § 548(c), which provides that a good faith transferee "has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." Similar in operation to § 550, § 548(c) gives a good faith transferee a lien against the property transferred for the value given for the property. But a transferee who does not act in good faith essentially forfeits that value. (The transferee is entitled to file an unsecured claim for the value given to the debtor,[21] but the practical effect in most cases is that most or all of that value is not recovered.)

Here, the "value" the Defendants gave the Debtor for the property was the satisfaction of the $65,000 mortgage encumbering the Property. If the Defendants had acted in good faith, they would have been entitled to a lien against the property for that value. And, in effect, that lien existed in the form of the refinanced mortgage. But the bankruptcy court held, and we agree, that the Defendants did not act in good faith. Therefore, the Defendants are not entitled to a lien against the property and they must forfeit the value given, which in this case means that the Defendants must repay the estate the amount of the refinanced mortgage.

---

[20] We may affirm the bankruptcy court's decision on any basis supported by the record. *Moore v. Forrest City School District*, 524 F.3d 879, 885 (8th Cir. 2008).

[21] *See In re Sherman,* 67 F.3d 1348, 1358 (8th Cir. 1995).

## IV. CONCLUSION

For the reasons stated above, we affirm the decision of the bankruptcy court in all respects.

———————————