# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

Nos. 14-6037 and 14-6042

_____

In re: Keeley and Grabanski Land Partnership

*Debtor*

------------------------------

Kip M. Kaler, in his capacity as Chapter 11 Bankruptcy Trustee of the *Debtor*
Keeley and Grabanski Land Partnership

*Plaintiff – Appellant/Cross-Appellee*

v.

Louie Slominski

*Defendant – Appellee/Cross-Appellant*

_____

Appeals from United States Bankruptcy Court
for the District of North Dakota - Fargo

_____

Submitted:  April 23, 2015
Filed:  May 14, 2015

_____

Before FEDERMAN, Chief Judge, NAIL and SHODEEN, Bankruptcy Judges.

_____

FEDERMAN, Chief Judge

In this adversary proceeding, the Bankruptcy Court avoided a lease of farmland between Debtor Keeley and Grabanski Land Partnership, and Louis Slominski, as a fraudulent transfer. Pertinent to this appeal, the Court also held that Slominski was obligated under § 550(a) to pay the Trustee the fair market rent for the time he occupied the land prior to the avoidance, rather than the lower rent called for by the lease. And, the Court awarded Slominski an offset, as a good faith transferee pursuant to 11 U.S.C. § 550(e), for the costs of his improvements to the land, namely, the wheat crops he planted there and certain taxes he paid. Both parties appeal the Court's calculation of the money judgment under § 550, and the Chapter 11 Trustee appeals the Court's refusal to grant a new trial based on newly-discovered evidence relating to whether the lease was executed pre- or post-petition. For the reasons that follow, we AFFIRM, IN PART, and REVERSE, IN PART.

## STATUTORY BACKDROP

This dispute involves the application of § 550, which provides the remedy in the event of an avoided fraudulent transfer. Section 550(a) provides, in relevant part, that to the extent that a transfer is avoided under § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the transferee.[1] Section 550(e)(1) then provides for a lien (in effect, a setoff) against the trustee's recovery for good faith transferees: Such good faith transferees are entitled to receive a setoff for the lesser of (A) the costs of improvements made after the transfer and (B) any increase in the value of the

---

[1] 11 U.S.C. § 550(a).

2

property as a result of the improvements.[2]   Here, both parties assert that the Bankruptcy Court erred in its application of § 550.

## FACTUAL BACKGROUND

John and Dawn Keeley filed an involuntary Chapter 11 bankruptcy petition against Debtor Keeley and Grabanski Land Partnership on December 6, 2010.  The Keeleys had been co-owners of the Debtor with Thomas and Mari Grabanski, but had had a falling out with them.  The Bankruptcy Court granted the order for relief on January 7, 2011, and Kip Kaler was appointed as the Chapter 11 Trustee on April 5, 2011.

The Debtor's principal assets consisted of two separate pieces of farm property located in Texas (collectively, the "Texas Properties"), which were the subject of a lease by the Debtor to Louis Slominski, a friend of Thomas Grabanski. Slominski and the Debtor asserted that the lease between them started as a verbal lease in November 2010, but just a few days prior to the December 6, 2010 involuntary bankruptcy filing, the lease had been reduced to writing via a "Farm Lease Crop Share" dated December 1, 2010 (the "Lease").  As discussed more fully below, the Trustee asserts that the Lease was actually executed postpetition (no earlier than April 2011), and that it had been backdated to December 1, 2010 to make it appear to have been entered prepetition.

In any event, the written Lease provided for a three-year term commencing December 1, 2010, and expiring November 1, 2013, thus covering the 2011, 2012, and 2013 crop years.  The Lease called for Slominski, as the tenant, to pay the Debtor, as the landlord, twenty percent of the gross proceeds derived from the land,

---

[2] 11 U.S.C. § 550(e)(1).

3

with a minimum annual payment of $300,000. Lease payments were due in arrears on the first day of November of each year between 2011 and 2013. Slominski farmed the Texas Properties in 2011 without objection from the Trustee and, on November 10, 2011, Slominski deposited into his attorney's trust account a check in the amount of $314,464.55, representing the rent calculated under the terms of the Lease for 2011.

Meanwhile, the Trustee was trying to sell the Texas Properties. However, potential buyers did not want to buy the properties with the Lease in place, so the Trustee filed this adversary proceeding on August 26, 2011, seeking to avoid the Lease as being entered postpetition without authorization under 11 U.S.C. § 549 or, alternatively, as a fraudulent transfer under § 548(a)(1), asserting that the rent under the Lease was less than fair market value.

While that adversary proceeding was pending, the case was converted to Chapter 7 on October 11, 2011. Kip Kaler has continued to act as trustee in the Chapter 7 case.

In the adversary proceeding, the Bankruptcy Court held, by Order entered March 7, 2012, that the Lease had been entered into prepetition, so § 549 did not apply. However, the Court found that the fair market rent under the Lease was $490,845 per year and, therefore, the rent charged to Slominski under the Lease was below fair market value. Thus, the Court avoided the Lease as a fraudulent transfer under § 548 on that basis, and terminated the Lease.

The Court also held that Slominski was a good faith purchaser under § 550(e), but that Slominski had failed to prove the value of his improvements to the land at that point. Nevertheless, the Court held that Slominski was entitled to the crops growing on the land, but, in order to receive those crops (or their proceeds),

4

Slominski was required to pay the 2011 rent under the terms of the Lease, plus a pro-rata share of the 2012 fair market rent for the time Slominski occupied the property. The Court ordered that the $314,464.55 being held in Slominski's attorney's trust account for the 2011 rent be paid over to the Trustee. At that point, no money judgment was entered because the Court determined it lacked the necessary evidence to make full and proper determinations as to Slominski's setoff under § 550(e).

At about this same time as the March 2012 Order, the Trustee sold the Texas Properties. As was later clarified, those land sales included alfalfa crops growing on them, but not the growing wheat crops. After the Lease was terminated, the Trustee hired a local farmer to harvest the wheat crops, and the bankruptcy estate netted $442,218.09 from the wheat after harvest costs and management fees. Slominski claimed below, and does here, that he is entitled to those crop proceeds for the year 2012.

After several requests to clarify, reconsider, and amend orders in the adversary proceeding, the Court entered an Order dated October 7, 2013, concerning the remedy under § 550 for the fraudulent transfer. In that Order, the Court held that the estate was entitled to fair market rent for the entire time Slominski was in possession of the property. After prorating the 2012 crop year and making an adjustment for three months while the parties shared possession during the transition from Slominski to the Trustee's local farmer, the Court held that Slominski owed fair market rent of $490,000 for 2011, plus $255,200 for 2012, for a total of $745,200. After crediting Slominski the $314,464.55 he previously paid against the 2011 rent, the Court held that Slominski owed the Trustee a net $431,200 in fair market rent for the time Slominski had occupied the property.

The Court further found that Slominski had proven that he had compensable costs for improving the land under § 550(e)(1)(A) totaling $578,577.95. This was comprised of $563,698 for costs associated with planting the wheat crops, plus $14,879.95 Slominski paid for property taxes. The Court further found that Slominski had failed to prove any increase *in value* to the Texas Properties under § 550(e)(1)(B) as a result of any improvements but, nevertheless, held that Slominski was entitled to an offset under § 550(e)(1)(A) for the costs of improvements. As will be seen, such holding is not consistent with § 550(e).

Then, offsetting the $431,200 Slominski owed the estate for fair market rent under § 550(a) against Slominski's $578,577.95 in compensable expenses under § 550(e)(1)(A), the Court determined that Slominski was entitled to a judgment for $147,377.95 against the Debtor's estate.

After the Court entered judgment in that amount, both parties again moved to alter or amend the judgment. In addition, the Trustee moved for a new trial, asserting he had newly-discovered evidence that the Lease had been backdated. On October 27, 2014, the Court entered the last Order from which this appeal springs, denying all post-judgment motions. Both sides appeal the calculation of the money judgment, and the Trustee appeals the denial of his motion for a new trial based on newly-discovered evidence.

6

## STANDARD OF REVIEW

We review conclusions of law *de novo* and findings of fact for clear error.[3] A factual finding is clearly erroneous when a reviewing court is left with the definite and firm conviction that a mistake has been committed.[4] The clearly erroneous standard does not entitle a reviewing court to reverse the trier of fact simply because it would have decided the case differently: "[W]hen there are two permissible views of the evidence, we may not hold that the choice made by the trier of fact was clearly erroneous."[5] And, "where the factual findings call for an assessment of witness credibility, even greater deference to the trier of fact is demanded."[6] Because § 550(a) is permissive and expressly provides for alternative remedies, we review the bankruptcy court's decision as to whether the award recovery of the property, or its value, and its determination of value, for abuse of discretion.[7]

---

[3] *Doeling v. Grueneich* (*In re Grueneich*), 400 B.R. 688, 690 (B.A.P. 8th Cir. 2009).

[4] *Id.*

[5] *Id.* (citation omitted).

[6] *Id.* (citation omitted).

[7] *In re Bremer*, 408 B.R. 355, 357 (B.A.P. 10th Cir. 2009) (citing *In re Straightline Invs., Inc.*, 525 F.3d 870, 882 (9th Cir. 2008) (bankruptcy court's choice of remedies under 550 is reviewed for an abuse of discretion); *In re Armstrong*, 304 B.R. 432, 435 (B.A.P. 10th Cir. 2004) (matters of discretion are reviewed for abuse of discretion)).

## DISCUSSION

### *11 U.S.C. § 550*

Neither party appeals from the Bankruptcy Court's finding that the rent under the Lease was below fair market value and, therefore, that the Lease was an avoidable fraudulent transfer under § 548. The dispute here concerns the remedy.

Again, § 550(a) provides, in relevant part, that to the extent that a transfer is avoided under § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the transferee.[8] Section 550(d) provides that a trustee "is entitled to only a single satisfaction" under § 550(a).[9] Section 550(e)(1) then provides for an offset, in the form of a lien, against that recovery for good faith transferees:

> (e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of –
>
> > (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
> >
> > (B) any increase in the value of such property as the result of such improvement, of the property transferred.[10]

"The purpose of § 550 is to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred. . . . The primary goal is equity and

---

[8] 11 U.S.C. § 550(a).

[9] 11 U.S.C. § 550(d).

[10] 11 U.S.C. § 550(e)(1).

8

restoration, *i.e.*, putting the estate back where it would have been but for the transfer."[11]  "[T]he purpose of fraudulent transfer law is remedial rather than punitive."[12]  "Allowing the estate to profit by taking value that should be returned to a good faith transferee does not promote the purpose of § 550 to restore equity."[13]

*The Trustee's Recovery under § 550(a)*

As Slominski points out, § 550(a) provides for the recovery of the property fraudulently transferred *or* the value of such property, and § 550(d) prohibits a double recovery.  As stated, the purpose of this provision is to return the estate to its financial condition as of December 1, 2010 (the effective date of the Lease). Slominski asserts that, when the Trustee received the property transferred – which, he acknowledges, was the leasehold interest, and not title to the land – and turned around and sold the Texas Properties at a combined price of $7.8 million (which was $960,000 more than the Debtor paid for it), the estate was thereby returned to its prior financial condition as of December 1, 2010.  Slominski asserts that terminating the Lease, returning the property so it could be sold, and ordering him to also pay rent resulted in a double recovery of both the property transferred and the value of that property.

---

[11] *Decker v. Tramiel* (*In re JTS Corp.*), 617 F.3d 1102, 1111-12 (9th Cir. 2010) (citations and internal quotation marks omitted); *see also In re Grueneich*, 400 B.R. at 694 ("As a general proposition, the purpose of 11 U.S.C. § 548, in conjunction with § 550, is to return the estate to the position it would have been in if a fraudulent transfer had not occurred.").

[12] *In re Tronox, Inc.*, 464 B.R. 606, 618 (Bankr. S.D. N.Y. 2012).

[13] *In re JTS Corp.*, 617 F.3d at 1116.

9

Arguably, Slominski failed to raise this double-recovery argument before the Bankruptcy Court.[14] Even so, we reject it. Although Slominski acknowledges that it was the leasehold interest (and not title to the land) which was transferred and thus avoided, his argument misapprehends the nature of what was avoided and what was (or should have been) awarded under § 550(a).

As everyone acknowledges, if the Debtor had transferred title of the land to Slominski, and that transfer were avoided, then the Trustee would be entitled to either the return of the title to the land or the land's value. The remedy for avoidance of a lease does not fit so comfortably in § 550. Since it was the Lease which was avoided here, and a year and a half of the Lease had been consumed by the time it was avoided, it was not possible for the Court to order the return of that portion of the leasehold interest. "Courts will generally allow the trustee to recover the value of the property where the subject property itself is unrecoverable."[15] Since the Court could not order Slominski to turn over the Lease for the period of time in which Slominski had already occupied the land, the Court was limited to awarding the Trustee the value of the Lease for that period of time.

As to the period of time after the avoidance, Slominski asserts it was error for the Court to award the Trustee the leasehold interest itself in addition to the pre-termination rent. We disagree. The Lease only had value up to the date it was

---

[14] "[I]ssues raised for the first time on appeal are ordinarily not considered by an appellate court as a basis for reversal." *In re Hervey*, 252 B.R. 763, 767 (B.A.P. 8th Cir. 2000).

[15] *Armstrong v. Vedaa* (*In re Vedaa*), 49 B.R. 409, 411 (Bankr. D. N.D. 1985).

terminated by the avoidance; after the termination, the Lease had no value because it had been terminated. Possession of the land (and any future ability to lease or sell the land) reverted to the Trustee *not* as a remedy under § 550(a), but because Slominski's basis for possession – the Lease – was terminated and no longer in effect.

As the Trustee asserts, if the point of § 550(a) is to put the estate back into the position it would have been had the fraudulent transfer not occurred, and if the Trustee had had possession of the leasehold interest as of December 1, 2010, then he would have received fair market rent from another tenant for that period of time (or would have been able to sell it sooner). Awarding the Trustee fair market rent for the period up until termination did, in fact, put the estate back into the position it would have been had the transfer not occurred. There was expert testimony as to fair market rent, which was adopted by the Court. Slominski here asserts no error in the Court's acceptance of the expert's testimony concerning the fair market rent amount. The Bankruptcy Court did not err in awarding the estate that fair market rent for the time Slominski was in possession of the Texas Properties.

Slominski also asserts that, since he was not in possession of the Texas Properties on November 1, 2012, the date when the rent became due for that year, he would not have been contractually obligated to pay any of the 2012 rent and so the Court should not have awarded the 2012 rent. This argument is wrong because the amount of rent awarded under § 550(a) was based on the fair market value of the possession of the property for the time Slominski occupied it, not the rent due under the terms of the avoided Lease.

For those reasons, we conclude that the Bankruptcy Court did not err in holding that Slominski owed the Trustee $431,200 in net fair market rent.

11

Having established the Trustee's recovery under § 550(a), and having concluded that Slominski was a good faith transferee, which we discuss below, the Bankruptcy Court correctly turned to the setoff provided under § 550(e). Again, the primary goal here is "equity and restoration, *i.e.*, putting the estate back where it would have been but for the transfer."[16] The purpose of § 550(e) is to prevent a windfall to the estate or its creditors.[17]

As the Trustee asserts, under the plain language of § 550(e), Slominski is entitled to a setoff for *the lesser of*: (A) the cost, to Slominski, of any improvement made after the transfer and (B) any increase in the value of such property as the result of such improvement. Slominski bore the burden of proving his setoff for the improvements under this section.[18]

The Bankruptcy Court held that Slominski failed to prove that there had been an increase in value of the Texas Properties under paragraph (B), so Slominski was limited to the costs of the improvements under paragraph (A), which the Court found

---

[16] *In re JTS Corp.*, 617 F.3d at 1111-12.

[17] *In re Interstate Cigar Co., Inc.*, 285 B.R. 789, 796 (Bankr. E.D. N.Y. 2002) (quoting 5 Collier on Bankruptcy ¶ 550.06 (15th ed. 2002)).

[18] *See Braunstein v. Crawford* (*In re Crawford*), 454 B.R. 262, 276 n.8 (Bankr. D. Mass. 2011); *Sanders v. Hang* (*In re Hang*), Bankr. No. 05-30655, Adv. No. 06-02274-C, 2007 WL 2344958, at *6 (Bankr. E.D. Cal. Aug. 16, 2007); *In re American Way Serv. Corp.*, 229 B.R. 496, 525-26 (Bankr. S.D. Fla. 1999) ("Defendants, as transferees, have the burden of proving elements of value, good faith, and lack of knowledge in support of any good faith defense they may assert under §§ 548(c) or 550(b) or 550(e).").

was $578,577.95 ($563,968 for the cost of planting the 2012 wheat crops plus $14,879.95 in property taxes).

The Trustee asserts this was error, and we agree. Since Slominski bore the burden under § 550(e), and if – as the Court held – Slominski failed to prove any value to the improvement of the property under paragraph (B), then the amount under paragraph (B) would be zero, and the lesser of $578,577.95 and zero is zero. Under the plain language of the statute, the Bankruptcy Court erred in holding that Slominski was entitled to the costs of improving the property while proving no value to the improvements.

But, the Court's analysis misses the mark for another reason, which again highlights the awkwardness of applying § 550 to an avoided lease. Here, there are two potential compensable "improvements": payment of the taxes and the growing wheat crop. But, again, the "property transferred" was the leasehold interest, not the land itself. Arguably, neither the payment of taxes nor the planting of crops "improved" the leasehold interest. But, as we have said, the purpose of § 550 is to avoid a windfall to either the estate or the transferee. To require that Slominski pay the estate rent on the property while he was entitled to occupy it under the later-avoided Lease, but to also require that the resulting crop go to the estate, would create such a windfall.

As to the taxes, "improvements" is defined in § 550 to expressly include "payment of any tax on such property."[19] It is undisputed that Slominski paid $14,879.95 in property taxes on the Texas Properties. The cost of paying the taxes under paragraph (A) is equal to the value of having the taxes paid under paragraph

---

[19] 11 U.S.C. § 550(e)(2)(C).

(B), and so Slominski is entitled to a setoff under § 550(e) in the amount of $14,879.95.

Unlike taxes, the crops are not specifically identified within § 550(e)'s definition of "improvement." And, the Bankruptcy Court's decision was not entirely clear on that point because, although the Court found that the cost of planting the wheat crop was a *cost* of improvement under (A), it gave no value to the crop itself as an improvement under (B).

Although the parties cited no authority on the question of whether crops are an "improvement" to the land or the leasehold under § 550(e), and we found none, the Trustee concedes that, if Slominski were a good faith transferee, he would be entitled to the value of the crop, but not the higher cost awarded by the Court.

But Slominski argues that he need not rely on § 550(e) at all. That is so because he asserts he owned the crop that he planted while lawfully in possession of the land. Under Texas law,[20] "growing annual crops are in their nature personalty, and therefore sales thereof are not within the statutes governing the sales of real property."[21] "As, however, the crops are separate and distinct in their value from the land upon which they grow, the ownership of the one, even on mortgaged property, may be in one person and the title to the other in another."[22]

> It is the rule in this State that crops produced by annual cultivation, either growing or mature, are distinct in nature from the land on which they are grown. It is only in some instances, such as a sale of the land

---

[20] "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

[21] *Kreisle v. Wilson*, 148 S.W. 1132, 1134 (Tex. Civ. App. 1912).

[22] *Id.* (citation omitted).

14

upon which crops are growing, without reservation of the crops, that they are considered a part of the land. The rule is well established that crops, whether growing or mature, may be segregated from the land by the act of the owner.[23]

The wheat crops were not sold with the land, and, although the Trustee argues to the contrary with regard to his new trial motion, discussed below, the Court held that the written Lease Slominski operated under had been entered into by the parties before the bankruptcy. Based on that Lease, Slominski had the right to plant the crop and is entitled under Texas law to the proceeds of that crop.[24] This is so, regardless of whether he was a good faith transferee under § 550(e).

Regardless of whether the wheat crop is Slominski's separate personal property under Texas law – thus not subject to § 550 – or whether it would constitute an "improvement" to the land or leasehold interest under § 550(e), we conclude that, if Slominski is charged rent for the time he planted and cultivated the crop, he is entitled to the proceeds from the crop. This result, once again, makes the estate

---

[23] *McGarraugh v. McGarraugh*, 177 S.W.2d 296, 300 (Tex. Civ. App. 1944) (citations omitted).

[24] In addition, Texas recognizes the common law doctrine of emblements, *In re Waldron*, 65 B.R. 169, 175 (Bankr. N.D. Tex. 1986), which is defined as "[t]he crops or products of the land legally belonging to a tenant." *Fruin v. Gorden* (*In re Gorden*), 47 B.R. 245, (Bankr. W.D. Wis. 1985) (quoting *American Heritage Dictionary* 447 (2d ed. 1982)). *See also Dinwiddie v. Jordan*, 228 S.W. 126, 127 (Tex. Comm'n App. 1921); *Andersen v. Bureau of Indian Affairs*, 764 F.2d 1344, 1347 (9th Cir. 1985). The parties dispute whether this situation fits neatly within the doctrine because the Lease was not of indefinite duration, one of the generally-applied elements of the doctrine. We need not decide that issue, however, because, as discussed herein, we conclude that Slominski planted the crops under an unavoided written Lease and he therefore has both a legal and equitable interest in them.

15

whole, but prevents the estate from reaping a windfall at Slominski's expense. Slominski is, therefore, entitled to the proceeds from the wheat crop in the amount of $442,218.09.

Finally, Slominski asserts he is also entitled to compensation for wheat he planted into the alfalfa which was sold with the land. However, the Court found no such value, relying on evidence at trial that the buyer gave no value to that wheat and that it actually detracted from the value of the alfalfa. That finding is not clearly erroneous. Slominski is not entitled to a setoff for the cost of planting the wheat into the alfalfa because doing so produced no increase in value to anything.

As a result, Slominski is entitled to a setoff of $442,218.09 for the wheat crop proceeds, plus the taxes of $14,218.09.

## The Trustee's Motion for New Trial or Relief from Judgment Based on Newly-Discovered Evidence[25]

As it relates to Slominski's setoff under § 550(e), the discussion above assumes that Slominski was a good faith transferee, as the Court found. The Trustee asserts that, after the Court entered its October 2013 Order and Judgment, he discovered new evidence which, he says, proves that the Lease was not created until April 2011. That evidence consisted primarily of an unexecuted lease, computer activity on Grabanski's and his attorney's computers suggesting that the Lease

---

[25] Although the Trustee focuses on Rule 59 on appeal, the Court technically found that the Trustee's Rule 59 motion for new trial was untimely because it was filed more than fourteen days after the October 10, 2013 judgment was entered. However, the Court found that the motion was timely under Rule 60, but nevertheless denied it. As discussed below, however, the standard for "reconsideration" based on newly-discovered evidence is the same under both rules, so the distinction is not determinative here.

16

document was created in April, and the parties' inability to produce the Lease when first asked to do so.

The Trustee asserts that if the Lease was not executed until postpetition, then it is void, and the parties were actually operating under an oral lease starting in November or December 2010. Since oral leases are only valid for one year under Texas law,[26] the Trustee asserts Slominski had no authority to plant the 2012 wheat crop and he should be entitled to nothing from it, apparently regardless of whether the setoff is made under § 550(e) or as his separate personal property. He asserts that the Court erred in denying his motion for a new trial based on the newly-discovered evidence.

Rule 59 provides that a party may obtain a new trial in a non-jury case "for any reason for which a hearing has heretofore been granted in a suit in equity in federal court."[27] "Newly-discovered evidence" is recognized as such a reason.[28] Similarly, Rule 60(b)(2) provides that a court may relieve a party from a final judgment based on newly-discovered evidence.[29]

The Eighth Circuit has addressed the standard for considering newly-discovered evidence in the context of a motion to alter or amend under Rule 59(e)

---

[26] *See Mayberry v. Campbell*, 356 S.W.2d 827, 828 (Tex. Civ. App. 1962) (under Texas statute, since the land was being farmed under an oral agreement, the lease could not be enforced for a period longer than one year.).

[27] Fed. R. Civ. P. 59(a)(1)(A), made applicable here by Fed. R. Bankr. P. 9023.

[28] *See, e.g., United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006); *In re Paulson*, 477 B.R. 740, 746 (B.A.P. 8th Cir. 2012).

[29] Fed. R. Civ. P. 60(b)(2), made applicable here by Fed. R. Bankr. P. 9024.

as such:  "A [trial] court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e), and this court will not reverse absent a clear abuse of discretion."[30] "Under an abuse of discretion standard, this court cannot reverse the bankruptcy court's ruling unless it 'has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'"[31]

To prevail on a Rule 59(e) motion based on newly-discovered evidence, the movant must show that:  (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover the evidence before the end of the trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result.[32]  The same standard applies under Rule 60(b)(2).[33]  The moving party under Rule 60(b)(2) "bears a heavy burden."[34]

---

[30] *U.S. v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d at 933.

[31] *Kieffer v. Riske* (*In re Kieffer-Mickes, Inc.*), 226 B.R. 204, 210 (B.A.P. 8th Cir. 1998).

[32] *Id.  See also Schedin v. Ortho-McNeil-Janssen Pharms., Inc.*, (*In re Levaquin Prods. Liab. Litig.*), 739 F.3d 401, 404 (8th Cir. 2014); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1036 (8th Cir. 2007).

[33] *Id.*; *Greyhound Lines, Inc. v. Wade*, 485 F.3d at 1036.

[34] *In re Kieffer-Mickes*, 226 B.R. at 210 ("Rule 60 provides extraordinary relief; and, therefore, it is viewed with disfavor.").

Although the Bankruptcy Court found in favor of the Trustee as to the first three elements, it held that, even if the new evidence proved the Lease was not signed until April 2011, the result would be the same.

First, irrespective of whether the Lease was executed on December 1, 2010, or in April 2011, Slominski planted the 2012 crops under the authority of that Lease, not under an expired oral lease. If the Lease was executed in April 2011, as the Trustee asserts, then it was not *void*, but was *avoidable* as an unauthorized postpetition transaction under § 549. Thus, regardless of whether the avoidance was under § 548 or 549, the Lease was in place when Slominski planted the 2012 crop, and he is not a squatter entitled to nothing on that basis.

As it relates to the good faith question under § 550(e), the Bankruptcy Court held that its finding that Slominski was a good faith transferee would not change based on the unexecuted lease documents found on computers not belonging to Slominski and the Trustee's conclusory deductions from them. The Court reasoned that the good faith transferee question under § 550(e) focuses on the intent of the transferee[35] – here, Slominski – and the Court found his testimony regarding good faith to be credible. And, the Court held, Slominski had remained adamant he signed the crop share lease on December 1, 2010, and the Court detailed several reasons why it continued to believe Slominski's testimony, despite the new evidence. In sum, the Court was simply not persuaded that Slominski was incorrect or untruthful about the lease, despite the newly-discovered evidence.

---

[35] *See, e.g., In re Grueneich*, 400 B.R. at 693 (holding that, whether a transferee has knowledge of the debtor's insolvency is determined objectively, with a focus on what the transferee knew or should have known).

"Credibility questions are peculiarly within the discretion of the [trial] court" and are virtually unreviewable on appeal.[36] "[W]here the factual findings call for an assessment of witness credibility, even greater deference to the trier of fact is demanded."[37] The Bankruptcy Court provided ample explanation for concluding that its credibility determinations would not change based on the newly-discovered evidence and, therefore, did not err in concluding that the Trustee failed to meet his burden of showing that the result would be different. The Bankruptcy Court did not abuse its discretion in denying the Trustee's requests for relief based on newly-discovered evidence.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's determination that Slominski owes the estate $431,200 in net fair market rent pursuant to 11 U.S.C § 550(a) is AFFIRMED. The Bankruptcy Court's determination as to Slominski's setoff is REVERSED. Slominski's setoff against such rent for the 2012 crop is $457,098.04 (representing $442,218.09 for the wheat crop proceeds, plus the taxes of $14,879.95). The Bankruptcy Court's denial of the Trustee's motions based on newly-discovered evidence is AFFIRMED. This matter is REMANDED to the Bankruptcy Court for entry of Judgment in favor of Louis Slominski, and against the Debtor's bankruptcy estate, in the amount of $25,898.04.

_____

[36] *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 684 (8th Cir. 1997) (citing *United States v. McCarthy*, 97 F.3d 1562, 1579 (8th Cir. 1996)).
[37] *In re Grueneich*, 400 B.R. at 690 (citation omitted).